SANITARY MFG. CO. v. GAMER.
(No. 8767.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 26, 1918. Rehearing Denied March 2, 1918.)

1. PRINCIPAL AND AGENT ⊛⇒42 — FACT OF AGENCY—BUILDING CONTRACT.
Where a jobber handled for the manufacturer an order for water-closets of contractors to erect a schoolhouse, the contractors were not the agents of the jobber after they had filed voluntary petition in bankruptcy.

2. APPEAL AND ERROR ⊛⇒1058(3)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.
If there was any error in excluding evidence of declarations of a claimed agent of defendant offered as res gestæ, it was harmless, where the declarant himself testified as a witness to the same effect.

3. APPEAL AND ERROR ⊛⇒1058(1)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.
Where persons whose letters were sought to be introduced in evidence both testified in a general way to the same effect as the letters which were excluded, such exclusion of the letters, if erroneous, was harmless.

4. PRINCIPAL AND AGENT ⊛⇒1 — FACT OF AGENCY—BUILDING CONTRACT.
Neither the architect of a school building nor the superintendent of schools could be held to be the agent of a jobber, who took the order for water-closets of the contractors to build the school and handled it with the manufacturer.

5. APPEAL AND ERROR ⊛⇒736 — ASSIGNMENT OF ERROR—MULTIFARIOUSNESS.
An assignment of error which complains of two separate rulings of the trial court is multifarious, and will not be considered.

6. SALES ⊛⇒359(1) — PERFORMANCE — SUFFICIENCY OF EVIDENCE.
In an action by a manufacturer of water-closets against a jobber who handled the order of contractors to erect a school building, evidence held insufficient to show that the closets furnished the contractors were the identical closets ordered by the jobber.

7. PRINCIPAL AND AGENT ⊛⇒115(2)—RIGHT TO RELY ON AGENT'S PROMISE.
A jobber who handled for a manufacturer of water-closets the order of contractors to erect a school building had the right to rely on the promise of the manufacturer's agents that the same type of closets would be shipped to the contractors that the latter had agreed to take.

8. SALES ⊛⇒363—ISSUE.
In an action by the manufacturer of water-closets against a jobber, the court properly submitted a special issue whether the jobber, at or before he ordered the goods from the manufacturer, knew that the latter had fixed a price to the customers, a firm of contractors, to erect a schoolhouse, since it was a material consideration, inuring to the jobber, that he should receive a reasonable profit on the transaction.

9. SALES ⊛⇒363—QUESTION FOR JURY.
In such action, the court properly submitted the issue as to whether a moving consideration to the jobber to make the order of the manufacturer's goods, without which he would not have handled it, was the belief that he could fix a higher price with the contractors, his customers, and thereby make a larger profit.

10. SALES ⊛⇒124 — DUTY OF BUYER TO RETURN—WAIVER BY SELLER.
If a duty was owing by a jobber of plumbing supplies to a manufacturer of water-closets, on the jobber's attempted rescission of a contract to return the shipment of closets, or to place the same at the manufacturer's disposal, it was waived by the manufacturer by its refusal to accept rescission.

11. SALES ⊛⇒124—BUYER'S FAILURE TO RETURN—PRECLUSION TO COMPLAIN.
The acts of a manufacturer of water-closets, in procuring contractors to erect a schoolhouse to use closets by furnishing special design brackets and appliances after the jobber who handled the order had rescinded, precluded the manufacturer from complaining of the jobber's failure to return the closets.

Appeal from District Court, Tarrant County; R. B. Young, Judge.

Suit by the Sanitary Manufacturing Company against Charles Gamer. From judgment for defendant, plaintiff appeals. Affirmed.

Dedmon, Potter & Pinney, of Ft. Worth, for appellant. Capps, Cantey, Hanger & Short, W. L. Evans, and David B. Trammell, all of Ft. Worth, for appellee.

BUCK, J. In 1911 Collins Bros. had the contract for installing the plumbing in the new high school building in the city of Tem-

ple. The Sanitary Manufacturing Company of Hamilton, Ohio, through its traveling salesman, Martin Wys, called on one of the Collins Bros., and, after investigating the specifications for the installing of toilets, submitted to said Collins Bros. certain photographs of the Hamilton Gem closets, and quoted him their prices thereon, which was 50 per cent. off the list or catalogue quotation, and secured his agreement to use the closets, the photographs of which had been exhibited to him. Thereafter Wys called on T. J. Mahoney, the local Dallas agent of Charles Gamer, the latter doing a wholesale plumbing supply business in Ft. Worth. Wys suggested to Mahoney that he (Mahoney) take the Collins Bros.' order and handle the same, and that the Sanitary Manufacturing Company would give Gamer a discount of 50 per cent. and 8 per cent. off the catalogue price. The negotiations between Wys and Mahoney resulted in Gamer's agreeing to handle the transaction, and on May 10, 1911, Gamer made the following order for the goods:

"Ft. Worth, Texas, May 10, 1911.

"Sanitary Mfg. Co., Hamilton, Ohio: Please ship to Collins Bros., Temple, Texas, articles enumerated below at prices named. Freight allowance. Yours truly, The Gamer Company,
"By Mummet.

"Order No. 2074. 11 Hamilton Gem closets, type F–24 No. 847, with automatic seats and weights. 19 Hamilton Gem closets, type F–18, No. 847, with automatic seats and weights. All seats plain oak finish."

The closets were shipped October, 1911, and in the meantime the Sanitary Manufacturing Company had furnished to Collins Bros., upon request, measurements for "roughing-in" work preliminary to the installing of the closets. Upon receipt of the closets, on November 7, 1911, Collins Bros. wrote Gamer the following letter:

"Dallas, Texas, November 7, 1911.

"The Gamer Company, Ft. Worth, Texas—Gentlemen: The closets for the high school building at Temple have been received to-day, and we find from the roughing-in measurement that the factory sent us with our wall supports for the tanks, are going to come all wrong. They furnished us with a blueprint with detail exactly the manner in which the outfit should be set, and we have followed it closely. We find now that the tanks they have shipped miss our supports 7" too high for the backing strips that we placed in the plastered wall to carry the weight of these tanks. This is going to involve some expense that the factory should rightly bear. Wish you would notify them to that effect, as we propose to charge this item back to you, so that you may collect it from them. Very truly yours, Collins Brothers, per J. B. Collins."

By letter dated the following day, Collins Bros. complained that Gamer had charged them more than the price the Sanitary Manufacturing Company had made, stating that the latter had made them a net price of $32,-50 each, for the closets. On November 9, 1911, Collins Bros. wrote the Sanitary Mfg. Co. as follows:

"Dallas, Texas, Nov. 9, '11. The Sanitary Mfg. Co., Hamilton, Ohio—Gentlemen: Yesterday we were in receipt of shipment of closet outfits ordered through the Gamer Company for the Temple High School. Our man reports that there is one N. P. ball weight with stem, two 2" N. P. flush offsets, and eighteen pairs bottom brackets short. He also inclosed sketch showing the method in which he prepared the roughing-in behind the plastered walls to take care of the tank supports. We inclose you this sketch. We refer you to your sketch covering type E and type F of 18x24" wherein you show the closet screws in back of tank 15½" from center. You shipped tanks with lugs on the edge, and of course we will have to tear out all of this backing in order to get a support for the tanks. We do not care to be put to this expense and will be compelled to charge you back with same, and we ask you to send a fitting or bracket that will offer the same support instead of the one that we have arranged for. In any event express the shortage as soon as you possibly can, and advise us just what you can do in reference to these tank shortages. We are inclosing copy of this letter to the Gamer Co. so they will be advised of our correspondence."

On November 18th, by wire, first, then by letter, the Sanitary Manufacturing Company advised Collins Bros., that they had not been able to furnish the type of tank shown in the photographs, which had been exhibited by Wys at the time the order was made, but, owing to the necessity for prompt shipment, they had been forced to send an earlier and different pattern. In the letter, advice was given as to the most economical and efficient means of installing the fixtures received by the use of certain strips, etc. On November 15, 1911, the Gamer Company, under which name Charles Gamer was doing business, wrote the Sanitary Manufacturing Company the following letter:

"Gentlemen: We have your invoice dated October 19, 1911, covering material shipped to Collins Brothers, Temple, Texas. However, after having charged up this material, we received a letter from Collins Brothers stating that there would be a great deal of expense attached to the transaction, in view of the fact that the material did not agree with the specifications. They also advised us that you quoted them direct, and as there is absolutely no profit whatever for us in the transaction, to handle it at the price which they claim you made them, we must decline to handle this shipment, and are therefore returning you the invoice, and ask that you take the matter up direct with Collins Brothers."

In reply to this letter, the Sanitary Manufacturing Company wrote Gamer, declining to release him from responsibility for payment, and thereupon Gamer renewed his refusal to assume any responsibility whatever in regard to the transaction, and referred the Sanitary Manufacturing Company to Collins Bros. Several letters and wires were passed between these parties, without effecting any change in the attitude of the Gamer Company. The closets were in fact installed, after the changes had been made as to the installation, which were rendered necessary by failure to ship the pattern used by Wys in securing the order. On November 20, 1911, Collins Bros. filed their voluntary petition in bankruptcy in the United States District Court at Houston. On November 22d, Collins Bros., "subject to the approval of the

receiver in bankruptcy," wrote the Sanitary Manufacturing Company, calling their attention to the failure to ship certain parts and attachments which were not included in the first shipment. These items were received by an employé of the receiver of Collins Bros., and later said receiver was paid in full by the school board of Temple for the closets.

In a suit by the Sanitary Manufacturing Company against Charles Gamer, judgment was sought for $887.50, which was alleged to be the list price of the 30 Hamilton Gem closets, less the 50 per cent. and 8 per cent. discount. Defendant denied liability, and pleaded that the plaintiff did not ship the goods ordered, but goods of a different kind and character, and that defendant rejected the substituted goods on their arrival and refused to accept same. He further pleaded that at the time defendant took over the order at the instance of plaintiff's agent, Martin Wys, said plaintiff failed to inform defendant or defendant's agent, Mahoney, that any special price had been quoted Collins Bros., but, on the contrary, stated that no price had been quoted Collins Bros. That defendant, under the custom and practice among factories and jobbing houses handling this character of goods, expected to make a profit of from 15 per cent. to 20 per cent. above the price paid the factory. That if he had known that the plaintiff had quoted Collins Bros. the price of 50 per cent. discount, he would not have accepted the order; that this fact was fraudulently concealed by plaintiff from defendant, and as soon as defendant learned thereof, he notified plaintiff that he would no longer be bound by said contract and agreement. The cause was tried on special issues, and judgment was rendered for defendant, and plaintiff has appealed.

Appellant's first assignment complains of the exclusion of certain proffered testimony of its witness, Martin Wys, detailing a certain conversation alleged to have occurred between Wys and one of the Collins Bros. It is urged that Collins Bros. were the appellee's agent for receiving the shipment, and that any statement made by said Collins was admissible for the purpose of showing that the closets were in fact received, made satisfactory to the school board, and paid for by it. To sustain this assignment, appellant cites several authorities, including Cooper v. Britton, 74 S. W. 91, Standefer v. Aultman et al., 34 Tex. Civ. App. 160, 78 S. W. 552, both by this court, and Mechem on Agency, § 714. In the cited section, Mr. Mechem says:

"The statements, representations, and admissions of the agent, made in reference to the act which he is authorized to perform and while engaged in its performance, are binding upon the principal in the same manner and to the same extent as the agent's·act or contract under like circumstances, and for the same reason. * * * But it is obvious from this statement of the rule that not every statement, representation, or admission which the agent may choose to make is binding upon the principal. In order to have that effect, the statement or admission must have been made: (1) In respect to a matter within the scope of his authority. The term 'authority' as here used has the same significance which it has in reference to the agent's act or contract. If, therefore, the statements, representations, or admissions offered in evidence were made by one who either had no authority at all, or had no authority. to represent the principal in the matters concerning which they were made, they are not admissible against the principal. (2) So the statements, representations, or admissions must have been made in reference to the subject-matter of his agency. * * * (3) And the statements, representations, or admissions must have been made by the agent at the time of the transaction, and either while he was actually in the performance, or so soon after as to be in reality a part of the transaction. Or, to use the common expression, they must have been a part of the res gestæ. If, on the other hand, they were made before the performance was undertaken, or after it was completed, or while the agent was not engaged in the performance, or after his authority had expired, they are not admissible. In such a case they amount to no more than a mere narrative of a past transaction, and do not bind the principal. The reason is that, while the agent was authorized to act or speak at the time and within the scope of his authority, he is not authorized, at a subsequent time, to narrate what he had done or how he did it."

The portions of the deposition of J. B. Collins, to the exclusion of which this assignment is directed, were as follows:

"I have had a conversation with Mr. Collins, of the firm of Collins Bros. On the last conversation—I have had several conversations with him—he told me that the job was practically completed, and that the fixtures had been sent, and he had received the brackets and put up the fixtures· and everything was in fine working order. * * * The last conversation I had with Mr. Collins was in Dallas, and that was the latter part of February, 1912. At that time I did not know that the materials shipped were not in accordance with his specifications that had been figured. I knew there were some controversy, but I had not seen the fixtures. As far as I know, there was no difference between the goods that were ordered and those shipped; as far as I know the identical goods were received and shipped that were ordered. I had a conversation with Mr. Collins about the time the goods were received by him, and that in the latter part of November, 1911. In that conversation he told me the goods did not fit his roughing-in measurements, and that he had roughed-in for tanks with bottom lugs. I talked with Jack Collins about this controversy before I last talked with Mr. Gamer. I had not learned from him what the dispute was about, and he had not told me. Mr. Collins said he wrote in for bottom brackets, and when he put in his studs, he put them in for the bottom brackets."

[1, 2] The evidence shows that Collins Bros. filed their voluntary petition in bankruptcy on November 20, 1911, and on November 22d, they wrote appellant company, "subject to the approval of the receiver," that they had not received "the flush offsets and other parts that we wrote you about some time since." We hardly think, under the· circumstances, that Collins Bros. should be considered as the agents of the appellee

here at the time the alleged conversation was had between one of them and the witness Wys. But even if such testimony was improperly excluded, no material error is shown, in that said Collins testified in the case and used language and stated facts to the same purport and effect as that used in the conversation with Wys, which was excluded. Said witness testified:

"It is a fact that we received these goods that have been described and installed them in the Temple High School Building, and the trustee has been paid in full for them, and the reason for nonpayment to the Gamer Company was that our concern failed. As to the items that remained undelivered on Nov. 22, 1911, I will say that there were a number of small items, such as brackets, flush ells and ball weights that were afterwards delivered by express and received by our Mr. Walker, who was then in the employ of the receiver."

We think no reversible error is here shown. If there was any error in excluding the declarations offered as res gestæ it is harmless, since the declarant himself testified as a witness to the same effect. Railway Co. v. Cornell, 29 Tex. Civ. App. 596, 69 S. W. 980, affirmed in 97 Tex. 634, without opinion. See Railway Co. v. Lumbley, 56 Tex. Civ. App. 418, 120 S. W. 1050.

[3, 4] We therefore overrule appellant's first assignment, and also the second, which presents the same character of alleged error. J. F. Kimball, superintendent of the Temple schools, and also Gus Clark, superintendent for architects, whose letters were sought to be introduced, both testified in the case, and in a general way to the same effect as were the letters from them, which were excluded. Moreover, we do not think that under any circumstance either the architect or superintendent of schools could be held the agent of appellee.

[5] We sustain appellee's objection to the consideration of the third assignment on the ground that the said assignment complains of two separate rulings of the trial court, and is therefore multifarious. Moreover, independent of the question of multifariousness, we are of the opinion that no error is presented.

[6, 7] The fourth assignment, directed to the failure of the court to give a peremptory instruction, is overruled. We do not think the evidence sustains the appellant's contention that the closets furnished Collins Bros. were the identical closets ordered by appellee. It is true that certain of appellant's witnesses testified that the pattern or type of closets, the photographs of which were shown Collins Bros., did not differ in name or numbering or lettering from the pattern which was in fact shipped, but it is found in evidence that the ones shipped differed in style, and in respect to shape and place of the lugs and attachments, etc., from the ones the photographs of which were shown Collins Bros., and which constituted the subject-matter of the contract between appellee and appellant. The fact that the appellant company had two different types of closets described in the same way would not make said two types the same closets. Appellee had the right to rely on the promise of appellant's agents that the same type of closets would be shipped to Collins Bros., which the latter had agreed to take. Appellant in its letters, and in the testimony of its witnesses, acknowledged that there was a difference in said two types, and Collins Bros., declined to accept from appellee the shipment, as a full compliance of the contract, on the ground that the pattern shipped was different from that ordered, and required extra expense to install.

We also overrule appellant's fifth and sixth assignments, directed to the submission of certain issues, because, as we believe, the contention of appellant that the patterns sold and thus shipped were identical is not sustained by the record.

[8] We are further of the opinion that the court did not commit error in submitting special issue 3a, to wit:

"Did Charles Gamer, at or prior to the time he ordered the goods in question from the plaintiff company, know that the plaintiff had fixed a price to Collins Bros. on said goods?"

Certainly it was a material consideration, inuring to appellee, that he should receive a reasonable profit on the transaction. Appellee's testimony was to the effect that appellant's salesman Wys expressly denied having quoted a price to Collins Bros., that it was the custom for the manufacturer to give the jobber a copy of the quotation which he had made to the jobber's customer, and that it was not the custom for the manufacturer to quote the jobber and then quote the customer without the jobber's knowledge; that where the manufacturer does not advise the jobber that the customer has been quoted, the jobber can rely on the fact that no quotation to the customer has been made; that in agreeing to handle the transaction, appellee relied on the custom to the effect that Collins had not been quoted, and that if he had known that Collins had been quoted a price at 50 per cent. discount on the list price, he would not have handled the transaction at all; that he could not make any profit out of the transaction at the difference between the discount to him, the appellee, and the discount to Collins Bros.

[9, 10] This defense was specially pleaded by defendant, and we are of the opinion that it was properly so, and that the evidence made it a question for the jury. We are further of the opinion that the court committed no error in submitting to the jury the issue as to whether one of the moving considerations to appellee to make the order of appellant's goods, and without which he would not have handled same, was the belief that he would be able to fix a higher price for said goods with Collins Bros. and there-

by make a larger profit for himself. Therefore we overrule appellant's seventh and eighth assignments, and also the ninth, which complains of the submission of the issue of whether or not appellee, immediately upon learning that the price of the goods in question had been made by plaintiff to Collins Bros. rescinded the contract with appellant by notifying it that he would no longer he held by same. If a duty was owing by appellee to appellant, upon the former's attempted rescission of the contract, to return the shipment, or to place the same at appellant's disposal, it was waived by appellant by its refusal to accept such attempted rescission. Swanke v. Herdeman, 138 Wis. 654, 120 N. W. 414; 2 Black on Rescission and Cancellation, § 623, p. 1438. In the section referred to, Mr. Black says:

"Thus, where a seller clearly declares to a buyer his intention to insist on the sufficiency of a machine sold to him, and refuses to accept its return in any way, the buyer need not, pursuant to the contract, return it to the place where it was received, as a condition precedent to his right to rescind for breach of warranty. Such a refusal to accept a return of the property may be made out from any act or declaration which demonstrates that a formal offer to return it would be fruitless."

[11] We think, moreover, appellant's acts in procuring Collins Bros. to use the goods by furnishing special designed brackets and appliances, after appellee had rescinded, precludes it from complaining of a failure to return. Culbertson v. Blanchard, 79 Tex. 486, 15 S. W. 700; Plotner & Stoddard v. Markham Warehouse & Elevator Co., 122 S. W. 443; Merrifield v. McClay, 72 Or. 90, 142 Pac. 587; Strauss v. Fur. Co., 76 Miss. 343, 24 South. 703.

All assignments are overruled and the judgment is affirmed.

Affirmed.

CONNER, C. J., not sitting, serving on writ of error committee at Austin.

---

⚫══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

