**WASHINGTON et ux. v. GILES.** (No. 2251.)

(Court of Civil Appeals of Texas. Texarkana.
March 25, 1920. Rehearing Denied
April 22, 1920.)

1. **Appeal and error** ⊙⟶731(5)—**Assignment that verdict is contrary to evidence not considered.**

An assignment that the verdict was contrary to the evidence will not be considered, because too general.

2. **Appeal and error** ⊙⟶733—**Assignment that judgment is contrary to law not considered.**

An assignment that the judgment was contrary to law will not be considered, because too general.

3. **Appeal and error** ⊙⟶738—**Multifarious and too general assignment not considered.**

Assignment that court erred in admitting deed to N., "and also several tax deeds to plaintiff W., more thoroughly explained in the official stenographer's notes," will not be considered, being multifarious and too general.

4. **Mortgages** ⊙⟶87—**Whether plaintiff procured trust deed by defendants held for jury.**

In trespass to try title, question of whether plaintiff procured defendants' execution of trust deed, etc., by fraud held for jury.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Suit by William Giles against Ben P. Washington and wife. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

This was a suit of trespass to try title, brought by appellee against appellants, husband and wife, in which judgment was rendered for appellee. The land in controversy was certain lots in the city of Houston. Appellants' answer to the suit consisted of a plea of not guilty, a plea setting up the statute of limitations of 10 years as a bar to the suit, and a plea in which they alleged, substantially, that the lots were their homestead; that appellee, claiming he owned notes made by them for sums aggregating $2,000, secured by a mortgage lien on the lots, repeatedly threatened to have them put off same, and in April, 1917, commenced a suit against them in a district court of Harris county, alleging that he was the owner of the lots; that the notes were "without consideration, being for a pretended indebtedness against their homestead"; that they (appellants), "through their ignorance of law," nevertheless "thought they were obliged to pay the notes" or lose their homestead; that they therefore agreed with appellee that, if he would destroy the notes, dismiss said suit, and "give them a warranty deed to the lots,"

they would pay him $75 in cash and make and deliver to him their promissory note for $3,229, payable in monthly installments of $35 each; that they paid appellee $75, and afterwards made him the note for $3,229, as they agreed they would, and that appellee made and delivered a deed conveying the lots to them; that on or about June 1, 1917 (when same became due), they offered to pay appellee the first installment of $35; that he refused same, claiming they owed him $200; that a few days later they offered to pay him the $200 he demanded, but he refused to receive it, claiming they owed him $1,000; that appellee never at any time had title to the lots, and that his suing them, as stated, and "all of his acts, were done with the express purpose to unlawfully cheat, swindle, and defraud them out of their homestead."

In compliance with appellants' demand that he do so, appellee filed an abstract showing that he relied for title on instruments as follows: (1) Deed from himself to appellants, dated May 7, 1917, conveying the lots in question. (2) Deed from appellants, also dated said May 7, 1917, conveying the lots to E. R. Campbell as trustee. (3) Deed from said Campbell as trustee, dated January 5, 1918, conveying the lots to appellee. At the trial the instruments specified were offered by appellee and admitted by the court as evidence. It appeared from recitals in the deed from appellee to appellants that the consideration was $75, paid by the latter to the former, and the execution and delivery by them to him of their promissory note for $3,229, payable in monthly installments beginning June 1, 1917, of $35 each, secured by a vendor's lien retained on the lots, and stipulating that default for 60 days in the payment of any installment should at the option of the holder of the note operate to make the entire amount thereof then unpaid due and payable. It appeared from the face of the deed in trust to Campbell that it was made by appellants to further secure the payment of the note mentioned above, and it appeared from recitals in the deed from Campbell as trustee to appellee that the sale of the lots by the former was in compliance with the terms of appellants' deed to him. It appears from the record that appellants were negroes.

Testifying as a witness, appellant Ben P. Washington said he and his wife had been in possession of the lots, claiming and using same as their homestead, from 1901 to the date of the trial, to wit, February 21, 1919, and that they were then occupying and so using same. Further testifying, he made statements substantially as follows: Appellee claimed he held four notes, for sums aggregating $2,000, made by appellants, further claimed he owned the lots, and repeatedly

demanded that they move off of same. In April, 1917, appellee commenced suit against appellants, alleging that he was the owner of the lots. The officer who served the citations to appellants, at the time he served same, told the witness that he must get off of the lots, or he (the officer) would "throw him out—push him out in the street." After the citation was served on him, the witness inquired of an attorney he went to see about the matter why the citations were served. The attorney told him he did not know, but would see appellee or his attorney and find out. The attorney of whom he made the inquiry afterwards told him "it was," quoting—

"for not signing papers; I had to sign some papers. And I asked him what papers, and he said he would get them from Mr. Campbell (appellee's attorney), and told me to come back in two or three days. I went back in two or three days, and he said, 'If you don't want to be throwed out, you have to sign those papers,' and I signed those papers. He just throwed the papers down and told me to sign them. * * * I didn't think anything of it, so I didn't see where he could make me sign any papers on my own homestead and give a deed to my homestead. I left then, and I didn't see how Mr. Giles could sell me my homestead back. I didn't have no idea that was the transaction. * * * When I signed those instruments, I thought I was signing an extension of the notes he claimed against me. * * * I went to Mr. Giles and offered to make the first payment of $35 a month, and when I went to him he told me he would not accept anything less than $200. I went to him later with the $200, and he told me he would accept nothing but $1,000."

On his cross-examination said Washington said it was about a month after he signed the papers that he offered to pay the installment first due on the note, and that it was about a month later when he offered to pay appellee the $200 he demanded. He further testified that he was not notified that the lots were to be sold by virtue of the trust deed to Campbell. The trial court was of the opinion it appeared as a matter of law that appellee was entitled to recover the land, and instructed the jury to return a verdict in his favor. The appeal is from a judgment in accordance with such a verdict.

W. A. Rowe and R. H. Holland, both of Houston, and Todd, Graham & Williams, of Texarkana, for appellants.

Louis, Campbell, & Nicholson, of Houston, for appellee.

WILLSON, C. J. (after stating the facts as above). [1, 2] Of the four assignments in appellants' brief, the first, that the verdict was contrary to the evidence, and the second, that the judgment was contrary to law, will not be considered, because too general. Rule 26 for the Government of Courts of Civil Appeals (142 S. W. xii); Miller v. Ezell Mercantile Co., 201 S. W. 734.

[3] For the same reason, and also because it is multifarious, the fourth assignment, that the trial court erred in admitting as evidence a deed from appellants to N. T. Masterson, "and also several tax deeds to plaintiff, William Giles, more thoroughly explained in the official stenographer's notes," will not be considered. Railway Co. v. Currie, 160 S. W. 656; Sanitary Mfg. Co. v. Gamer, 201 S. W. 1068; Lynch v. Bernhardt, 201 S. W. 1051.

[4] The third assignment is that the trial court erred "in instructing a verdict for plaintiff [appellee here] thereby depriving the defendants [appellants here] of their right and privilege to have the jury pass on the issue of fraud alleged by the defendants to have been committed against them and to their detriment by plaintiff." This assignment, we have concluded, after careful consideration of the entire record, should be sustained.

Therefore the judgment will be reversed, and the cause will be remanded to the court below for a new trial.