107 P.2d 557

WOOD v. EMINGER et al.

No. 4547.

Supreme Court of New Mexico.

Nov. 18, 1940.

G. L. Reese, Sr., of Roswell, and Howard F. Houk, of Clovis, for appellants.

Wesley Quinn, of Clovis, for appellee.

MABRY, Justice.

For convenience we refer to appellee Wood as plaintiff and appellants as defendants, the same as they were designated in the court below.

Plaintiff Wood filed suit against some ten defendants, seeking recovery upon a promissory note in the sum of $715 less a credit of $215, given through the salvage of an automobile in question which was wrecked very soon after purchase. The defendants, answering, deny liability for the reasons and upon the grounds hereinafter shown, and upon motions for instructed verdicts on the part of plaintiff and defendants the trial court took the case from the jury, made findings of fact and conclusions of law and gave judgment for plaintiff. Seven of the defendants appeal.

The defendants, one Joe Bartlett and nine others, had signed a promissory note on or about the first of January, 1934, in the principal sum of $715 for the purpose of securing credit for the said Bartlett in an effort to re-establish and promote a farm organization newspaper in Curry County, which plaintiff contends included the purchase of an automobile for the use of Bartlett. The note was in the conventional form except that the concluding paragraph carried this proviso: "that this note is not binding on any of the signers until signed by not less than ten men."

Bartlett, the first signer, interested himself in circulating a note, payable to plaintiff, among his friends of the neighborhood who were interested in the farm association, and secured thereon seven names including his own. He delivered the note to plaintiff and secured therefor an automobile with title and possession going to him, the said Bartlett. Within a short time after the delivery of the note, probably within two or three days, the automobile so purchased was wrecked and almost completely destroyed by Bartlett, who immediately, and with the consent or procurement of plaintiff Wood to whom the note had previously been negotiated, circulated anew the said note and secured three additional signers thereto. The additional signers were secured in an obvious effort to have the required ten names thereon, and were secured without reference to the signers' financial worth or liability. The three names so later secured were of persons who were in fact insolvent.

In addition to this, after the note had been signed by seven of the co-makers, and possibly, though not certainly, was in the hands of plaintiff Wood, Bartlett, or plaintiff, permitted one of the seven earlier signers, one J. O. Page, to have

his name stricken and withdrawn from the note.

The question presented is, whether all signers of the note were not absolved from liability because of the following alleged circumstances: (a) The note was delivered while incomplete upon its face in that it contained less than the required ten signatures; (b) the name of Page was stricken and the note thus altered after its execution and delivery to plaintiff; and (c) as to the last three signers, there was no consideration moving to those whose names were so secured after the delivery or completed negotiation of the note.

It is undisputed, and the court so found, that when the note was delivered to plaintiff and the automobile then and there sold and delivered to the said Bartlett, it contained only seven signatures, some of which signers, including the said Page whose name was thereafter stricken, being financially responsible. It is equally clear that the name of Page was stricken from the note while it was in the possession of plaintiff, or that plaintiff at least knew the name had been stricken after the signing. The evidence and findings of the court also support defendants' contention that the three additional signatures hereinbefore referred to were secured by Bartlett with the knowledge and consent of plaintiff, if not in fact at plaintiff's direction. It does not appear anywhere that any of the earlier seven signers of the note knew at the time of the transaction by which the additional three signers were secured, that the note had been delivered to plaintiff in the first instance without the ten signatures as called for, or, that the name of Page had been stricken.

Plaintiff apparently concedes that the condition of the note was not met until ten signatures had been secured, but urges that under the circumstances here present the negotiations were not necessarily completed with the first delivery to plaintiff and that as agent for the other signers, Bartlett had implied authority to complete the note, even after its delivery, and that, in any event, the other signers could not, under the circumstances, complain of either the striking of the name of Page or the addition of the three signatures after delivery.

If we understand plaintiff's position, he would urge that the note became binding when Bartlett secured ten signatures, regardless of whether such were secured before or after delivery. He overlooks the rule that after unconditional delivery (conceding it to be a note which, under its terms, was ripe for delivery) the contract becomes complete and irrevocable. Obviously the stipulation in the note was to protect other signers from a premature, or any, delivery or negotiation thereof until ten co-makers had joined in carrying the burden.

None of the signers were assured of any particular signers being secured, or that any of them would be financially responsible, plaintiff points out. Ten signatures of any men would satisfy the con-

dition of the note; and whether they signed before or after the note was negotiated for the automobile and the trade completed would not be material. We cannot follow that reasoning, however.

█ Certainly, it cannot be said that, under the facts, plaintiff is a holder in due course. Defendants question whether a payee may, in any event, be such a holder; and there is authority both ways upon the question, which, however, does not become important here. See Sec. 375–378, 8 Am.Jur. 113, Bills and Notes.

█ We take up first the point whether the note was valid at the time it was delivered to and accepted by the plaintiff. The court found that the note, when prepared, was made payable to plaintiff. Defendants strenuously dispute this fact in their general charge of fraud and bad faith on the part of Bartlett. But there is substantial evidence to support the court's finding in this respect. The court found, with ample evidence to support it, that upon the delivery of the note, plaintiff delivered the automobile to Bartlett "and accepted the note in payment thereof." The plaintiff had notice of the condition burdening the note. It was plainly written therein. It is not claimed that plaintiff talked with any signers except Bartlett prior to the delivery of the note. He is bound by what the note upon its face discloses and nothing more. His rights are likewise limited thereby.

The following rule is stated in 10 C.J.S., Bills and Notes, § 81, page 519: "When the instrument has been actually unconditionally delivered, it becomes a present and complete contract, and the act of delivery is not revocable." There is no evidence in the record to indicate a limited or conditional delivery in the case at bar. The delivery was unconditional. Plaintiff took it in complete payment for the car then sold and delivered. Subsections I and IV of Sec. 27-158, N.M.Comp.Laws 1929, provide when the holder of an instrument is considered a holder in due course, where it is said in speaking of the instrument: "I. That it is complete and regular upon its face; * * * IV. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

█ Can it be said that plaintiff took the note in question without notice of the glaring infirmity of incompleteness? Was the note in fact "complete and regular upon its face"? Obviously plaintiff took a note incomplete and irregular upon its face. Not only was the note of such character that plaintiff could not rely upon a status of bonafide holder in due course, but was void and wholly unenforcible from the moment of its negotiation and delivery in violation of the plain language of the restrictive clause contained therein.

See Key v. Usher, 99 S.W. 324, 30 Ky. Law Rep. 667; Hakes v. Russ, 6 Cir., 175 F. 751, 99 C.C.A. 327; McKnight v. Parsons, 136 Iowa 390, 113 N.W. 858, 22 L.R.A.,N.S., 718, 125 Am.St.Rep. 265, 15

Ann.Cas. 665; American National Bank v. Kerley, 109 Or. 155, 220 P. 116, 32 A.L.R. 262; Swanke v. Herdeman, 138 Wis. 654, 120 N.W. 414; First National Bank of Rigby v. Campbell, 39 Idaho 736, 230 P. 43. But, even were such infirmity not fatal to plaintiff's case, which it is, the point now to be discussed would be.

Were all prior signers upon the note discharged by the release of Page from his liability thereupon? The court found upon substantial supporting evidence that the cancellation of Page's name from the note was without the knowledge, consent or procurement of any of the other signers. It clearly appears that when Page came to Bartlett and asked that his name be taken from the note, Bartlett took him to plaintiff, to whom the note had been delivered, and that plaintiff produced the note and exhibited it with the observation that "I will show you it's off." It does not appear when the name was stricken, whether before or after delivery, except that it was stricken after the first seven signers had affixed their signatures. Obviously one or more of the signers may have relied upon the signature of Page, a financially responsible person, in themselves agreeing to become signers thereon. Defendant Smith, a party to the note, in fact testified that he relied upon the Page signature already affixed, in himself becoming a party to the obligation.

■ The release of one codebtor releases the other codebtors, and the rule likewise applies to a release of one or more—less than all—of the obligors on a promissory note. 8 Am.Jur., Sec. 784, page 439. This was the rule before, as well as after, the adoption of the Uniform Negotiable Instruments act. The reason often advanced in support of this rule, is, that since the debtors have a right of contribution among themselves, the releasing creditor ought not be allowed to enforce his claim against one whose remedy of contribution has been destroyed by the release. Pettigrew Machinery Co. v. Harmon, 45 Ark. 290; Clifton v. Foster, Tex.Civ.App., 20 S.W. 1005.

■ The alteration of the note, whether made by Bartlett or Wood, rendered it void and unenforcible against any and all the defendants whose names appeared thereupon at the time of such alteration and cancellation. This would include the names of all the signers except the last three, and these rely upon the additional defense of lack of consideration, as hereinafter shown. Defendants cite numerous authority in support of their position, among them being: Ruby v. Talbott, 5 N. M. 251, 21 P. 72, 3 L.R.A. 724; Pacific Mut. Agr. Credit Corp. v. Hagerman, 39 N.M. 549, 51 P.2d 857, 101 A.L.R. 1301; 2 Am.Jur., Alteration of Instruments, p. 619; 3 C.J.S., Alteration of Instruments, pp. 916 and 921, §§ 11, 18; 2 C.J., Alteration of Instruments, § 11, p. 1179; 1 R.C.L., Alteration of Instruments, Sec. 30, p. 999; Martin v. Thomas, 24 How. 315, 16 L.Ed. 689; Smith v. United States, 2 Wall. 219, 17 L.Ed. 788, 789; Wood v. Steele, 6 Wall. 80, 18 L.Ed. 725; White v. Hass, 32 Ala. 430, 70 Am.Dec. 548; Bar-

ton Sav. Bank & T. Co. v. Stephenson, 87 Vt. 433, 89 A. 639, 51 L.R.A.,N.S., 346; O. N. Bull Remedy Co. v. Clark, 109 Minn. 396, 124 N.W. 20, 32 L.R.A.,N.S., 519 and note, 18 Ann.Cas. 413; Cornog v. Wilson, 231 Pa. 281, 80 A. 174.

In the case of Wood v. Steele, supra [6 Wall. 82, 18 L.Ed. 725], the court in a well reasoned opinion, invoking what it termed a "stern but wise policy", held a co-maker discharged where a date inserted in the note had thereafter been changed without his knowledge or consent. The court held that because of the change the agreement was no longer the one into which the defendants entered, and observed: "The law regards the security, after it is altered, as an entire forgery with respect to the parties who have not consented, and so far as they are concerned, deals with it accordingly." Plaintiff in the case at bar may not have made the alteration, but he knew the name had once appeared upon the note and that it was thereafter stricken, after others had signed, and clearly he then bore the burden of accounting for the alteration.

The well known rule supporting Wood v. Steele, supra, is set out clearly in 1 R.C.L., Alterations of Instruments, Sec. 30, p. 999, where it is said: "In the case of executory instruments, the rule is as previously stated, that the unauthorized alteration of such an instrument in a material part by one not a stranger to it, after its execution, operates as a destruction of the instrument so that no rights under it can be asserted, and no rights between the parties can be proved by it."

The plaintiff makes much of the point that there was no condition understood or inserted in the note requiring financially responsible signers. He points out that since the signatures of *any* ten men would have fulfilled the condition, defendants should not be allowed to complain that one of the signers, even though financially responsible, was discharged by the striking of his name from the note. It is not enough that plaintiff can say that any or all of the signers need not have been financially responsible persons. The co-makers of the note had a right, nevertheless, to enjoy any benefit from the financial responsibility which any one of them contributed by his signing—and that, aside from any question that the alteration of the instrument destroyed its force as a binding obligation, in any event. We hold, therefore, that under the circumstances of this case, such point is without merit.

When the holder, the plaintiff, took the note, he was not a holder in due course because of the infirmities appearing upon the face thereof, even if otherwise he could have been. He had actual knowledge of the infirmity or defect. First National Bank of Albuquerque v. Stover, 21 N.M. 453, 155 P. 905, L.R.A.1916D, 1280, Ann. Cas.1918B, 145. The court made a substantially supported finding to the effect that striking the name of Page from the note increased the liability of all others who had signed prior to such alteration. And the undisputed testimony shows fur-

ther, and the court found, that the last three names added subsequently and after the completed delivery of the instrument, were of insolvent persons.

As to the last three names so secured as aforesaid, what may be said of their liability? Defendants rely upon the point of lack of consideration, and this position is well taken. We have already stated the rule to be that, when there has been an actual and unconditional delivery of such instrument, "it becomes a present and complete contract, and the act of delivery is not revocable." 10 C.J.S., Bills and Notes, § 81, p. 519. Obviously, therefore, there must be some new consideration to support any promise or point to any liability of the three last signers, N. W. Kiker, S. J. Davis and R. F. Davis. The note was negotiated and the consideration therefor, the automobile, was delivered to defendant Bartlett and the transaction thus closed, all before such three last signatures were secured. Plaintiff bears the burden of showing some consideration for the additional signers, and this burden is not sustained.

The evidence, showing that one of the makers of the note, defendant Smith, concurred in and approved the act of crediting the $215 salvaged from the wrecked car upon the note, does not attain the importance with which plaintiff would clothe it as an act of ratification. It does not show ratification of the invalid note, even as to this one signer, and it bears none of the characteristics of estoppel. Defendant Smith could have ignored the plan of credit, of course, but to permit it, or to suggest it even, under the circumstances, could not have altered the nature of the note, void as to all signers because of the alteration and change, and because delivered when clearly incomplete and wholly contrary to the plain language thereof. Moreover, plaintiff did not plead ratification. This cannot be shown under the general denial. Southern Car. Mfg., etc., Co. v. Wagner, 14 N.M. 195, 89 P. 259; Bybee v. White, 35 N.M. 270, 295 P. 295.

The court erred in not sustaining the motion of defendants for a directed verdict at the conclusion of the hearing. Other questions argued, not being now important, will not be discussed.

For the reason stated, the judgment will be reversed with direction to the trial court to reinstate the cause upon the docket and give judgment for defendants, and it is so ordered.

BICKLEY, C. J., and BRICE, ZINN, and SADLER, JJ., concur.