152 P.2d 883

**MACKEY et al. v. LAMMONS.**

No. 4850.

Supreme Court of New Mexico.

Nov. 3, 1944.

Lee R. York, of Hobbs, for appellants.

H. Vearle Payne, of Lordsburg, for appellee.

MABRY, Justice.

Plaintiffs Mackey and Forbus brought suit against defendant Lammons seeking damage because of an alleged breach of contract to lease certain land in Torrance County, defendant allegedly breaching the terms of the lease by taking possession and ousting plaintiffs from the premises. Two other causes of action were separately set out in additional counts, upon one of which plaintiffs recovered; but these additional counts not being material to the appeal need not be further noticed.

The case was tried to a jury, the court instructing a verdict in favor of defendant after testimony was taken and when plaintiffs rested, upon the ground that no lease had ever been entered into; and plaintiffs appeal.

The contention of the parties revolves about the question of whether a valid contract of any kind or character was entered into. The trial court held in favor of defendant, concluding as a matter of law that there was no lease, and sustained the motion of defendant for an instructed verdict. The motion, in substance, was to the effect that, (a) the instrument relied upon was signed in blank without authorization for anyone to complete the document; (b) that the agreement to give a lease was coupled with the condition whereby the defendant was not to be bound and no lease was to be effected until plaintiff secured a loan from the Farm Security Administration to finance the operation of the premises to be leased, which loan was never secured; (c) that the lease upon which plaintiffs rely does not represent the proposal or agreement of the defendant for the reason that additional land was included therein over and above the land and acreage proposed by the parties to be leased; (d) that the lease was, without authority, changed to show a term of five, instead of three, years as proposed by defendant and accepted by plaintiffs; and (e) that no delivery of the lease was ever made and therefore no contract was entered into in any event. Plaintiffs admit that all parties signed the lease as an unfilled-in blank instrument, and that there was more land incorporated in the lease upon which they rely than the two sections which they at the time understood they were to get; but they disavow any knowledge of how such additional land came to be incorporated in the deed. Plaintiff Mackey says he had nothing to do with any more land being included in the deed and doesn't know "how it got in there."

The trial court's conclusions of law are attacked as erroneous upon the ground that

questions of disputed fact were presented by the pleadings and evidence which called for submission of the case to the jury. Without saying whether some of the above mentioned points relied upon as a defense did not present disputed questions of fact which should have gone to the jury, yet if it may be said that any one of such points presents questions of law merely, and that the trial court's conclusion in respect thereto was correct, the judgment must be affirmed. We thus make only such limited examination of the questions presented as is necessary to determine whether the judgment may thus be sustained.

It appears that defendant Lammons offered to lease her farm land consisting of 1280 acres (two sections) providing plaintiffs could secure a loan from the Farm Security Administration to finance the proposed farming operation; plaintiffs made such application for loan, but never secured it; defendant, in order to accommodate plaintiffs in their representation to the Farm Security Administration, in seeking a loan, signed a lease, entirely in blank as to all essentials, such as the description of the property, the term for which the lease was to run and in other respects. One Spivey, the local agent in charge of the Farm Security Administration office himself, after receiving from plaintiffs the blank form, completed the document, not in the presence nor by direction of defendant. The lease was then sent to the regional office of the agency to be there held pending approval of the loan. However, the regional office, when the loan was denied, at the request of one of the plaintiffs, returned the lease with the application for loan and other papers, to plaintiffs. The lease as completed by Spivey included at least forty acres never intended to be included by any of the parties to the suit; and plaintiffs admit the lease was to run for only three years, whereas, as it finally appeared in its completed form, and unbeknown to defendant, a term of five years was provided for. This insertion was also made by the Agent Spivey of the Farm Security Administration.

Even if plaintiffs could rely upon the contention that Agent Spivey of the Farm Security Administration was the agent of defendant to receive and fill in all blanks in the lease, though contrary to the agreement of the parties (which they cannot), yet, nevertheless, says defendant, since Spivey gave up possession and sent the document to the regional office of the Administration, and thereafter the officers or employees of that office, without authority, erroneously delivered it to plaintiffs, notwithstanding no loan was ever negotiated, there was no lawful delivery. But this question we need not, and do not, decide.

Obviously, without relying upon other grounds upon which defendant bases her defense, we have, certainly, one material alteration of the lease relied upon which would destroy its validity, viz., the term of the lease agreed upon was, without authority, enlarged. It was at plaintiffs' re-

quest that the blank lease was executed by the parties to be by plaintiffs taken and left with Agent Spivey. The defendant never had any negotiations or contact with Spivey; the change in, or making up of, the contract was the work of Spivey, a third party and stranger to the contract and in the presence of plaintiffs only—a pretty slender thread upon which to hang authority to make a contract without the knowledge or consent of one of the parties thereto.

 It was incumbent upon plaintiffs to show that the lease upon which they relied had been executed and delivered by defendant. This they failed to do. Whether the Farm Security Administration under the circumstances would have had authority to fill in some blanks in the lease after its execution by defendant would present a nice question. Under certain circumstances an incomplete contract could be completed in some respects, at least by a party so authorized; and under other circumstances it could not operate at all as a valid lease or conveyance unless it be at least substantially completed at the time of its execution and delivery. Jones v. Rockey Cliff Coal Mining Company, 27 N.M. 41, 198 P. 284. But, in any event, in the absence of a showing that defendant, the lessor, had authorized the vital change as to the life of the lease from three to five years, such lease, because of these changes or "fill-ins" made contrary to the agreement, could not be relied upon and is void.

 The contention of plaintiffs seems to be that since the contract in question "was delivered in escrow" or to the agent of defendant, that any changes made by the escrow holder either as to description, terms of the lease or otherwise, would be binding upon defendant. But in this plaintiffs are in error.

It does not appear from the evidence that Mr. Spivey was authorized either verbally or in writing to fill in the blanks. Any support to be afforded plaintiffs for their view that Spivey had authority to fill in all such blanks, must be found, if at all, in the assumption to be relied upon as a matter of law, that since he came into possession of the instrument signed in blank he was, therefore, authorized by defendant to so complete the instrument, here a wholly erroneous premise. Certainly, when the lease as finally completed, whether with or without authority of the grantor to fill blanks, provides for a term of years never agreed to or contemplated by any of the parties, it cannot be said that authority was given to so complete the instrument in this vital particular.

"An agent's authority to fill a blank in a deed after its execution must be pursued strictly. If the agent exceeds his authority, the deed, as between the grantor and grantee taking the conveyance with knowledge that it was executed with an unfilled blank which was filled by the agent, is void." 8 Thompson on Real Property, Per. Ed., Section 4231.

Plaintiffs admit in their reply to defendant's answer setting up as a defense the unauthorized change in the lease form, that the agreement of the parties was to the effect that the lease should run for only three years and that they so advised the Farm Security Administration when that agency suggested a change to give a five year term; and plaintiffs disavow any responsibility whatsoever on their part for the making of the change.

■ In 3 C.J.S. Alteration of Instruments, p. 978, § 68, it is stated:

"With respect to the laws governing the alteration of instruments, it has been held that where a paper which is wholly blank, or so incomplete that there is nothing expressive of the intention of the parties and the filling in of the blanks will create the substantial parts of the instrument, is signed, sealed, and delivered, the writing in of the terms of the contract, in pursuance of either express or implied authority, does not make such writing a valid instrument. A distinction has been drawn in this regard between the filling in of an instrument which is so radically defective that the insertion of the omitted matter will practically amount to the creation of the instrument, and the completion of a merely imperfect instrument by the filling in of matter suggested and called for by the written or printed portion, and apparently intended by the parties to be inserted."

We find the same rule treated in 1 R.C. L. 1020, where it states:

"A distinction is recognized between the filling in of a blank left in an instrument, as for the date, amount, place of payment, or the like, and the filling in its entirety of a blank form for an instrument, as the filling in of a printed form for a deed in which none of the blanks have been filled, but which has been merely signed and sealed. The cases take the view that in the former case a merely imperfect instrument was perfected, but in the latter an instrument which had no validity or meaning as it existed in its blank state was by the filling in thereof practically created. Cases recognizing this distinction hold that in the latter case no valid instrument can be created by a delivery under either express or implied authority to fill up the blank form, since as there was nothing of substance contained in the deed when executed nothing could pass by it."

This was not a case in which an instrument nearly completed when signed was to be perfected by filling in blanks as to some simple omissions. Nor do we have for consideration any question of estoppel as against a third party who might have relied upon a presumption of authority imposed in the holder of the blank and unfinished instrument to complete it. The loan was never made. No third party interest is involved. A distinction is to be made, we know, between the acts of filling in blanks in the presence, and by direction, of the principal, and such acts done in his absence, 2 C.J. § 131, p. 1249; 3 C.J.S., Alteration of Instruments, § 70. Here we

have a contract in which one of the most vital terms and parts thereof has been added by a stranger to the contract signifying an agreement that neither of the parties thereto had ever contemplated. This cannot be done.

The filling in of the blanks was admittedly done after the execution of the lease, and by others than the grantor; and plaintiffs are unable to show any authority therefor. Under such circumstances, as in cases of alterations (Mosley v. Magnolia Pet. Co., 45 N.M. 230, 114 P.2d 740; Scheer v. Stolz, 41 N.M. 585, 72 P.2d 606; Wood v. Eminger, 44 N.M. 636, 107 P.2d 557), the burden is upon the party claiming under the instrument to explain it, and to show it was legally permissible and authorized.

"As between the original parties to the instrument, sealed or unsealed, the insertion in blanks left therein of material matter in excess of the express or implied authority has the same invalidating effect as any other material alteration." 3 C.J. S. Alteration of Instruments, p. 979, § 71. It must affirmatively appear that the party filling in the blanks had proper authority to do so, conceding, which we do not, that such a wholly blank instrument could be so filled in and made effective even with authority. See Richards v. Day, 137 N.Y. 183, 33 N.E. 146, 23 L.R.A. 601, 33 Am. St.Rep. 704; C. I. T. Corp. v. Glennan, 137 Cal.App. 636, 31 P.2d 430; Fleming v. Head, Tex.Civ.App., 228 S.W. 302.

In view of the disposition made of the case upon the ground that the contract of lease relied upon is invalid, other questions need not be noticed.

For the reasons stated the judgment is affirmed; and it is so ordered.

SADLER, C. J., and BICKLEY, BRICE, and THREET, JJ., concur.