## TANCRED v. FIRST NATIONAL BANK OF FORT SMITH.

### Opinion delivered May 1, 1916.

1. BILLS AND NOTES—PAROL EVIDENCE OF SURETYSHIP.—Parol evidence is admissible to show that one whose name appears on a note as maker, was in fact a surety.

2. BILLS AND NOTES—RELEASE OF JOINT MAKER—RELEASE OF SURETY.—The release from liability of one of two joint makers of a note, without the consent of one who signed the note as surety, operates to release the surety also.

Appeal from Sebastian Chancery Court, Fort Smith District; *Wm. A. Falconer,* Chancellor; reversed.

*Read & McDonough* for appellant.

1. The appellant was a surety and not a primary debtor.  It was the duty of the court to cancel the note as to appellant and require its surrender to him.  54 Ark. 97; 34 *Id.* 44; 9 *Id.* 418; 14 *Id.* 218; 106 *Id.* 160; 73 *Id.* 484; 92 *Id.* 606.  The release of Mrs. Harper released Tancred.  20 L. R. A. 712 and note; 52 *Id.* (N. S.) 368 and note; 7 Cyc. 732; 32 Cyc. 40, 201.  A renewal

is not the creation of a new debt; it is merely the extension of the old one. 96 Ark. 268.

2. The bank discharged Tancred by releasing Annie R. Harper from any obligation to pay the note to Tancred. 45 Ark. 290; 44 *Id.* 394 and cases *supra.*

3. The release of Mrs. Harper was a release of Tancred, whether he was a maker or surety. The release of one jointly and severally bound is a discharge as to all. 45 Ark. 290; 16 *Id.* 331; 44 *Id.* 356; Baylies on Suretyship, p. 274; Pingrey on Suretyship, § 94; 30 Ark. 667. By making the new contract the bank released appellant, as a matter of law. 111 Fed. 590; 58 Ill. 479; 74 Ark. 600; 77 *Id.* 128; Pingrey on Sur. § 94; 45 Ark. 293.

4. An extension of time releases a surety. 34 Ark. 44; 35 *Id.* 463; 54 *Id.* 97. A release of one of the principals releases the surety. 27 Am. & Eng. Enc. L. p. 454; 76 Ark. 171. Where a new contract takes the place of an old one the parties are released. Baylies on Sur. p. 260 and cases cited.

*H. C. Mechem,* for appellee.

1. Tancred was not a surety. He was a principal as the court found. The burden was on him to show that he was a surety. 92 Ark. 604. The decree is not against the clear preponderance of the proof. 112 Ark. 341; *Ark. Nat'l Bk.* v. *Stuckey,* 121 Ark. 302.

2. Mrs. Harper was never under any obligation to pay the note to Tancred and the note was not released. Her release would not release Tancred the principal. 44 Ark. 357; 44 *Id.* 293; 80 Kans. 196.

3. No extension of time was given. The loan was made to Tancred and he was never released.

McCulloch, C. J. Harper & Wilson, a partnership composed of George W. Harper and C. P. Wilson, who were engaged in the mercantile business in the city of Fort Smith, became indebted to the appellee, First National Bank of Fort Smith, in the sum of $40,000 for borrowed money, and their indebtedness to other creditors amounted to about the same sum. The partnership

owned a large amount of property, both real and personal, and each partner possessed individual property. Harper died in the year '1913, leaving surviving his widow, Annie A. Harper, to whom he bequeathed and devised all of his property.

After the death of Harper, the appellee became desirous of obtaining security for the debt of Harper & Wilson, and the surviving partner, C. P. Wilson, and Mrs. Harper, the widow of George W. Harper, were desirous of giving security and also of obtaining an additional loan of money to use in payments to other creditors. There was a conference between the interested parties, appellee being represented by its president, Mr. Handlin, and C. P. Wilson and the attorney for the firm of Harper & Wilson were present at the conference. Appellant, M. T. Tancred, who is Mrs. Harper's brother, was also present. Wilson stated that he needed $20,000 in cash to make payment to other creditors sufficient to satisfy pressing demands. His statement was that the desired sum would pay about 50 cents on the dollar of the amounts owing to general creditors and that that would satisfy them for the present, and he offered to execute a mortgage to the bank to secure the indebtedness of $40,000 to the bank and also the further sum of $20,000 which he desired to borrow. Mr. Handlin offered to lend the sum of $15,000, but said that that was the limit of the amount he was wiling to lend for the reason he would subject the management of the bank to criticism by the Comptroller of the Currency if as much as $20,000 additional was loaned. Wilson thought that he could not get along with only $15,000 in addition to the indebtedness to the bank, as that sum would be insufficient to satisfy the general creditors.

Finally it was suggested by Mr. Handlin to appellant that his credit was good for $5,000 with the bank, and that that sum would be loaned on his credit and would make up the additional amount of $20,000 which was thought necessary to use in the settlement with the cred-

itors of Harper & Wilson. Appellant at first demurred, but finally an arrangement was made whereby the full amount of $20,000 was advanced. There is some conflict in the testimony as to the precise language used in the conversation, but the substance of the agreement was that $15,000 was to be loaned directly to Harper & Wilson, and to be secured by a mortgage which also secured the original debt of $40,000, making a total direct indebtedness of $55,000 from Harper & Wilson, and that the additional sum of $5,000 was to be advanced to and to be used by Harper & Wilson but was to be put in the form of a loan to Tancred, the appellant. This agreement was carried out and the mortgage was executed to the bank by Wilson, as surviving partner of the firm of Harper & Wilson, and by him individually, and by Mrs. Harper, on real estate of the partnership and also some owned by Wilson himself, to secure the said sum of $55,000. A note was also executed in the sum of $5,000 and signed by Wilson and Mrs. Harper and endorsed by appellant.

This occurred on May 12, 1913, and on the same date Wilson and Mrs. Harper executed a mortgage to appellant which contained the recital that appellant had "upon his credit obtained from the First National Bank of Fort Smith, Arkansas, the sum of five thousand dollars ($5,000) which he has loaned to C. P. Wilson and Annie Harper to apply upon debts owing by the late firm of Harper & Wilson," and conveyed the property described in the mortgage to appellant on condition that "should the said C. P. Wilson as surviving partner and C. P. Wilson individually, or Annie Harper save the said M. T. Tancred harmless from the indebtedness which he has incurred to the First National Bank of Fort Smith, Arkansas, for Five Thousand Dollars for the benefit of said parties and pay said indebtedness or cause the same to be paid without any liability upon the said M. T. Tancred then this conveyance to be of no further force and effect." The mortgage embraced the property which is embraced in the mortgage to appellee and cer-

tain other property owned by Wilson. The mortgage to the bank was placed of record first.

The additional funds thus received by Harper & Wilson, including the $5,000 embraced in the transaction in which appellant was a party, were all placed to the credit of Harper & Wilson on the books of the bank, and checked out by Wilson, as surviving partner, in making payments to other creditors. None of the funds ever, in any form, passed through the hands of appellant, but were, as before stated, placed by the bank directly to the credit of Harper & Wilson.

Subsequently there arose a controversy between appellee and Mrs. Harper as to the latter's right to renounce under the will of George W. Harper and take her statutory allotment of dower instead of the provisions of the will, and in settlement of the controversy an agreement was reached whereby certain property of the decedent's estate was released from the mortgage, and Mrs. Harper was released from certain portions of the debts secured by the mortgage in consideration that she would not renounce the will of her deceased husband. A written agreement was entered into, dated September 19, 1914, and among its recitals concerning the debt secured by the mortgage is a recital of the "note of C. P. Wilson and Annie A. Harper to First National Bank, endorsed by M. T. Tancred." The clause releasing Mrs. Harper reads as follows: "Fifth: That all individual estate of George W. Harper except said seven lots and stock in the Harper Coal & Coke Company, and the liability of Annie A. Harper, for the said debts owned by said bank, including the Parker Distilling Company debt, be and the same is hereby released in consideration of said Annie A. Harper not renouncing the will of George W. Harper."

The agreement was signed by appellee and by Mrs. Harper, and also by Wilson, and contained a clause whereby Wilson expressly consented to the release of Mrs. Harper and the estate of George W. Harper, and an express agreement on the part of Wilson that he would

pay the indebtedness of the firm of Harper & Wilson after exhausting the partnership assets for that purpose. Appellant was not a party to that agreement and there is no evidence showing that he consented thereto. The point of the controversy in the present litigation is whether or not the release of Mrs. Harper by appellee discharged appellant from the obligation.

There is, as before stated, a conflict in the testimony as to the exact language used by the parties when the loan of $5,000 was procured, but there is no dispute about the fact that the substance of the transaction was the procurement of $5,000 from the bank for the use of Wilson, as surviving partner of the firm of Harper & Wilson, and of Mrs. Harper, in discharging *pro tanto* the indebtedness of that firm to general creditors other than the bank itself, which was the heaviest creditor. The sole purpose of placing the loan in the form of an extension of credit to appellant Tancred was to satisfy the Comptroller of the Currency and to shield the officials of the bank from any criticism because of having made too large a loan to one party. Whatever may have been the form in which the parties intended to place the loan, it was only in the form of a loan to Tancred which in fact was made for the use and benefit of Harper & Wilson. The evidence shows that appellant was selected merely as the conduit through whose hands the funds were to be conveyed so as to reach the hands of Harper & Wilson, and the funds were in fact paid over to Harper & Wilson not through appellant but directly by placing the same to the credit of Harper & Wilson on the books of the bank.

(1) The recitals in the contract between the bank and Mrs. Harper, releasing her from liability, show that the bank treated Harper & Wilson as the primary debtors and appellant merely as a surety, because the note is referred to in that instrument as the "note of C. P. Wilson and Annie A. Harper to First National Bank, indorsed by M. T. Tancred." The indorsement by appellant of his name on the note made him a joint maker so

far as the face of the note is concerned, but it was competent to show by parol testimony the real facts that he signed only as a surety for the other makers. *Vandeventer* v. *Davis,* 92 Ark. 604. The release by the bank of Mrs. Harper, one of the principals, with knowledge of the fact that appellant was merely an accommodation indorser, operated as a release of the latter from the obligation of the contract.

(2) But even if we discard the testimony showing the real facts as to the transaction and treat appellant as a joint maker of the note, as he appears to be on the face thereof, still a release of one of the joint makers releases him from the obligation. This would not be true if the instrument amounted only to a covenant not to sue Mrs. Harper, but it amounts to more than that and is an unqualified release of Hrs. Harper from the obligation. The distinction between a release of a debtor and a covenant not to sue is fully discussed in the case of *Pettigrew Machine Co.* v. *Harmon,* 45 Ark. 290, where it was said that in order to have the effect of discharging other obligors a release "must contain a plain and distinct remission of the claim, and in that event parol testimony cannot be heard to show a contrary intention." It is further said that the whole instrument should be considered together in determining whether it was intended by the parties to be a release and to remit the claim or merely to create an undertaking not to sue one of the parties. In that case there was an express reservation of liability of the other obligors and it was held that the effect of the instrument was to constitute merely a covenant not to sue. In the present case the instrument on its face shows all three of the obligors to be joint makers, and in the contract of release there was an express reservation as to the liability of Wilson, one of the makers. There was no mention, however, of reserving the liability of appellant. He was not a party to the instrument and did not consent thereto. An unqualified release of one of his co-obligors necessarily deprived him of the right of contribution and must therefore, as to him, be

treated as a complete satisfaction of the obligation. 34 Cyc. 1081; *Carroll* v. *Corbitt*, 57 Ala. 579; *Hale* v. *Spaulding*, 145 Mass. 482.

We are of the opinion, therefore, that the release of Mrs. Harper operated as a discharge of appellant from all liability, whether he be treated as a surety according to the real purport of the transaction, or whether he be treated as a joint maker of the note according to the face thereof.

The decree is reversed with directions to enter a decree in favor of appellant.