Argued and submitted January 14, 1997; reassigned February 3, 1998, decision of Court of Appeals and judgment of circuit court reversed; case remanded to circuit court for further proceedings July 15, 1999

## Dwaine SCHIFFER
and White City Development,
*Respondents on Review,*

*v.*

## UNITED GROCERS, INC.,
an Oregon Corporation,
*Petitioner on Review.*

(CC 94-2411-L-2; CA A87467; SC S43670)

989 P2d 10

David J. Sweeney, of Brownstein, Rask, Arenz, Sweeney, Kerr & Grim, Portland, argued the cause for petitioner on review. With him on the briefs was Paul G. Dodds.

Charles M. Zennache, of Muhlheim Palmer Zennache & Wade, Eugene, argued the cause for respondents on review. With him on the brief was R. Scott Palmer.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Kulongoski, Justices.**

KULONGOSKI, J.

Durham, J., concurred and filed an opinion in which Kulongoski, J., joined.

** Fadeley, J., retired January 31, 1998, and did not participate in this decision. Graber, J., resigned March 31, 1998, and did not participate in this decision.

## KULONGOSKI, J.

We are asked in this case to reconsider the rule of law in Oregon that a release of one joint and several obligor on a promissory note releases the other joint and several obligors. This court recognized the "release of one releases all" rule in the context of a joint and several obligation as a matter of common law in *Crawford v. Roberts*, 8 Or 324, 325-26 (1880).[1] For the reasons explained below, we now agree with the overwhelming number of jurisdictions that have abrogated, either by judicial decision or by statute, the "release of one releases all" rule in contract.[2] We hold today that the release of one joint and several contract obligor does not release automatically the other joint and several obligors; instead, the release must be given effect according to the intentions of the parties to that release. The rule that we announce today is the same rule applied by this court to releases in tort. *See, e.g., Cranford v. McNiece*, 252 Or 446, 452-53, 450 P2d 529 (1969) (stating rule), *citing Hicklin v. Anders*, 201 Or 128, 135-36, 253 P2d 897 (1954). The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed. The case is remanded to the circuit court for further proceedings.

The facts of the case are uncontroverted, and we take them from the opinion of the Court of Appeals:

"In 1989, [Dwaine] Schiffer and John Gast located property in White City on which to build a grocery store. The property was owned by John and R.J. Batzer. Schiffer, Gast, and the Batzers then formed a partnership, White City Development ('White City'), for the purpose of constructing and operating a grocery store on the property. In order to finance the construction of the store, Schiffer and Gast approached defendant [United Grocers, Inc.] with the following proposal: Defendant would lease the property from

---

[1] *Crawford* addressed the "release of one releases all" rule in the context of a joint and several obligation. See the discussion of *Crawford* below, 329 Or at 96-97. This case similarly addresses only the effect of a release on a joint and several obligation. Apparently, Oregon did not ever adopt, either by judicial decision or by statute, the "release of one releases all" rule in the context of a joint obligation.

[2] For the current status of the law of releases in contract in the other 49 states and the District of Columbia, see the appendix to this opinion.

White City and, in turn, sublease the property to Schiffer and Gast. The financial strength of defendant, as prime lessee of the property, would enable Schiffer and Gast to secure financing for the construction of the grocery store.

"Under the lease between White City and defendant, White City agreed to pay defendant $68,802, which represented the cost of 'lease guarantee' insurance that defendant was to purchase, by which defendant would be indemnified if Schiffer and Gast defaulted on the sublease. Specifically:

"'45. LESSOR'S INDEBTEDNESS - LEASE INSURANCE: Lessor, [White City] hereby acknowledges an indebtedness to Lessee [defendant] in the amount of $68,802 (together with interest thereon as evidenced by the promissory note attached hereto and executed contemporaneously with this lease) representing Lessee's premium for lease guarantee insuring Lessee of the Sublessee's [Schiffer's and Gast's] performance of all obligations set forth under the Lessee's sublease. If such sum is not paid according to its terms, Lessee has the right to assert said sum as a right of set off against any sums due hereunder. If the lease is terminated prior to grant of possession, then this note shall be null and void.'

"On March 17, 1989, defendant and the partners of White City (Schiffer, Gast, and the Batzers) executed the prime lease. On the same day, White City's partners signed and executed a promissory note in favor of defendant in the amount of $68,802. That note provided, in part:

"'We, jointly and severally, promise to pay to the order of [defendant], at Portland, Oregon, the sum of SIXTY-EIGHT THOUSAND EIGHT HUNDRED TWO AND NO/100 DOLLARS due and payable at such time as [defendant] under a Lease Agreement dated March 17, 1989 is granted possession of the subject property pursuant to the terms of said Lease Agreement.'

"Due to an oversight, defendant failed to collect, and White City failed to remit, the $68,802 due under the lease and promissory note; consequently, defendant never purchased the lease guarantee insurance.

"Schiffer and Gast operated the grocery store until the business failed in July 1993. Following the failure of the

store, Schiffer and Gast entered into a 'Surrender Agreement' with defendant. That agreement addressed Schiffer's and Gast's defaults under the sublease and various equipment and inventory loans on open account with defendant. The agreement further provided:

" 'United agrees to release * * * Gast from all claims, demands, and causes of action arising out of the parties' prior course of dealings and under all open accounts, loans, security agreements, and promissory notes with United.'

"In July 1993, following the execution of the surrender agreement, defendant notified White City that the $68,802 lease insurance premium had never been paid and requested full payment. In September 1993, defendant again requested payment on the promissory note and stated that it intended to offset $68,802 against the balance of the rent it owed under the prime lease, as contemplated by paragraph 45 of the lease set out above. After receiving no response, defendant notified White City in May 1994 that it would begin to withhold rent under the prime lease.

"In June 1994, plaintiffs [Schiffer and White City] brought this action seeking, *inter alia*, a declaration that: (1) their joint and several obligations under the March 17, 1989 promissory note were extinguished by defendant's release of their co-obligor, Gast; and (2) consequently, defendant was not entitled to offset amounts allegedly due and owing on the note amounts it owed White City on the prime lease."

*Schiffer v. United Grocers, Inc.*, 143 Or App 276, 278-80, 922 P2d 703 (1996) (footnote omitted).

Plaintiffs moved for summary judgment on the theory that defendant's release of Gast from his obligation to defendant had, as a matter of law, concomitantly discharged Schiffer's and the Batzers' joint and several obligations to defendant. The circuit court, relying on *Crawford*, granted plaintiffs' motion. Defendant appealed. The Court of Appeals affirmed, also relying on *Crawford*. *Schiffer*, 143 Or App at 278. We allowed review to determine the continuing validity of the rule that the release of one joint and several obligor on a promissory note releases automatically the other joint and several obligors.

■ The promissory note that underlies the present action could be deemed to be a negotiable instrument. Before proceeding further, therefore, we must answer the threshold question whether the common law of contract or the applicable version of Article 3 of the Uniform Commercial Code (UCC), *former* ORS chapter 73,[3] controls the outcome of this case. As explained below, we conclude that the common law of contract controls this case because the promissory note in question is not a negotiable instrument under the version of the UCC in effect when the note was made.

To be a negotiable instrument subject to *former* ORS chapter 73, a note calling for the payment of money, such as the one under consideration here, had to be payable either on demand or at a definite time. *Former* ORS 73.1040(1).[4] *Former* ORS 73.1080 provided the applicable definition of "on demand":

"Instruments payable on demand include those payable at sight or on presentation and those in which no time for payment is stated."

We conclude that the promissory note here is not payable on demand. The note, on its face, is not payable at sight or on presentation. The note designates the time for payment as "due and payable at such time as [defendant] under a Lease Agreement dated March 17, 1989 is granted possession of the subject property."

*Former* ORS 73.1090 defined "payable at a definite time":

---

[3] In 1993, well after the execution of the promissory note under consideration here, the Oregon Legislature substantially revised ORS chapter 73 (Article 3 of the UCC, relating to negotiable instruments). We consider the issue under the version of the UCC applicable at the time of the making of that instrument.

[1] *Former* ORS 73.1040(1) provided:

"Any writing to be a negotiable instrument * * * must:

"(a) Be signed by the maker or drawer; and

"(b) Contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by ORS 73.1010 to 73.8050; and

"(c) *Be payable on demand or at a definite time*; and

"(d) Be payable to order or to bearer."

(Emphasis added.)

"(1)   An instrument is payable at a definite time if by its terms it is payable:

"(a)   On or before a stated date or at a fixed period after a stated date; or

"(b)   At a fixed period after sight; or

"(c)   At a definite time subject to any acceleration; or

"(d)   At a definite time subject to extension at the option of the holder, or to extension to a further definite time at the option of the maker or acceptor or automatically upon or after a specified act or event.

"(2)   An instrument which by its terms is otherwise payable only upon an act or event uncertain as to time of occurrence is not payable at a definite time even though the act or event has occurred."

None of the conditions in *former* ORS 73.1090(1)(a) to (d) applied to the promissory note. Therefore, the note is not "payable at a definite time." Moreover, under *former* ORS 73.1090(2), the note did not become "payable at a definite time" after the grant of possession of the property. Because the promissory note is neither payable on demand nor payable at a definite time, it is not a negotiable instrument under *former* ORS 73.1040(1). Because *former* ORS chapter 73 does not apply, the common law of contract controls the outcome of this case.

The issue before us is the continuing validity of the common-law rule that the release of one joint and several obligor on a promissory note releases automatically the other joint and several obligors. We approach that issue by first discussing the common-law origins of the "release of one releases all" rule and the theoretical bases used historically to justify that rule. We then discuss the *Crawford* decision, in which this court recognized the "release of one releases all" rule in contract in the context of a joint and several obligation, and one other Oregon case, *State v. Cummings*, 205 Or 500, 288 P2d 1036 (1955), in which this court, in *dicta*, spoke with approval of the "release of one releases all" rule. We then briefly examine the theories advanced in support of and

in opposition to the "release of one releases all" rule in contract. Finally, we state our own analysis that we believe dictates a different rule as to the effect of a release in contract given to a joint and several co-obligor. *See Heino v. Harper*, 306 Or 347, 351, 759 P2d 253 (1988) (discussing analytical factors).

The rule that the release of one co-obligor releases all co-obligors, at least for some specific types of obligations, has been part of the common law since the early 17th century. In *Cocke v. Jennor*, Hob 66, 80 Eng Rep 214, 214-15 (KB 1614), the court ruled that a release of one joint tortfeasor in an action for trespass released the other joint tortfeasors, reasoning that a release "is as good a satisfaction in law, as a satisfaction in deed," and that a plaintiff could have only one satisfaction, whether on a debt or in an action for trespass. Under this approach, a release operates as a satisfaction at law of a debt or obligation, as if the debt or obligation had in fact been paid in full. Consequently, a release of one contract co-obligor forecloses all other options for recovery, including maintaining actions against the remaining co-obligors. As the Montana Supreme Court observed eight years before this court's decision in *Crawford*, "this seems to be the language of the books since before the time of Lord Coke." *Collier v. Field*, 1 Mont 612, 619 (1872).

Commentators have pointed out that, on its face, that justification for the "release of one releases all" rule is unsound:

> "For when a claim is liquidated, a release may be given for less than the full amount, and there is consequently less than complete satisfaction. If the claim is unliquidated, the settlement is most often below the claimant's evaluation, and it cannot be known whether there has been complete satisfaction until there has been a determination by court or jury of its value. Consequently, it would appear that if amounts paid in settlement to one obligor are credited upon the claim and suit permitted against one or more co-obligors only for the balance, there is no possibility of more than one satisfaction."

Harold C. Havighurst, *The Effect of a Settlement With One Co-Obligor Upon the Obligations of the Others*, 45 Cornell L Q 1, 4 (1959) (hereinafter Havighurst).

In addition to the "one satisfaction" justification for the rule that a "release of one releases all," three other theories in support of the rule historically have been advanced: (1) the construction of the instrument against the releasor; (2) the difficulties presented by the right of contribution; and (3) the unitary character of a joint obligation. Havighurst at 3. We address those three theories each in turn.

Lord Coke noted that a release by deed given to one of two joint trespassers released the other as well. Lord Coke justified this rule on the theory that the deed of the injured party "shall be taken most strongly against himself," *i.e.*, that a deed is to be construed against the grantor. *Ibid.*, *citing* Lord Coke, *Commentary upon Littleton*, § 376. Whether this theory was accepted widely in Lord Coke's time as sufficient theoretical support for the "release of one releases all" rule is not clear. However, as Havighurst notes:

> "[A]lthough a few modern cases refer to the passage [discussed above], there is little disposition to accept this as the rationale. The release is no longer looked upon as a deed but as an informal contract, and there is no principle of construction applicable to contracts which requires an interpretation operating most strongly against the releasor. There is, to be sure, a principle of contract law under which an instrument is construed against the party responsible for its drafting, but since releases are usually drafted by releasees, if this principle is applied, it would more often than not require the opposite result. Coke's reason therefore is of no service today."

Havighurst at 3-4 (footnotes omitted). We agree.

Although adherence to the "release of one releases all" rule certainly avoids any difficulties presented by the nonreleased obligor's right of contribution, at least one commentator has noted that the "release of one releases all" rule "has been applied with perhaps the greatest rigor * * * in jurisdictions where there is no right of contribution." Havighurst at 6. Given that context, any difficulties presented by the right of contribution must be regarded as an insufficient theoretical justification for the "release of one releases all" rule.

Historically, the "release of one releases all" rule was not applied uniformly to all types of obligations in all jurisdictions. Some jurisdictions applied the rule only to joint obligations,[5] and some applied the rule to joint *and several* obligations as well as to joint obligations.[6]

At common law, a joint obligation was treated as a single obligation of all the obligors together and the individual obligation of no one of those co-obligors. Samuel Williston and Walter H. E. Yaeger, 2 *A Treatise on the Law of Contracts*, § 327 (3d ed 1959 and Supp 1988). Because there was only one obligation, there could be only one action for breach of that obligation: an action in which all the joint obligors were joined as defendants. *Id.* In contrast, joint and several obligations at common law involved a joint obligation of all the co-obligors together and, in addition, a separate obligation on the part of each individual obligor. The creditor thus had the option of suing each obligor individually; joinder of all the co-obligors was not necessary. *Id.* at § 328. *See also Anderson v. Stayton State Bank*, 82 Or 357, 373-74, 159 P 1033 (1916) (noting the differences between joint obligations and obligations that are joint *and* several).

The "unitary" nature of the joint obligation at common law frequently was held up as a theoretical justification for the rule that a "release of one releases all." Havighurst derides this "unitary obligation" theory as an "intellectual figment," and asserts that it provides no support for the "release of one releases all" rule in the context of either joint, or joint and several, obligations. Havighurst at 7. We need not go so far. Given the well-understood differences at common law between joint obligations and obligations that are joint and several, we cannot conclude that a joint and several obligation is "unitary" in nature. Whatever assistance is rendered in support of the "release of one releases all" rule by the

---

[5] Illinois, for example, applied the "release of one releases all" rule only to joint obligations. *See, e.g., Rice v. Webster*, 18 Ill 331, 332-33 (1857) (release of one joint debtor is a release of all).

[6] Massachusetts, among other jurisdictions, applied the "release of one releases all" rule to joint and several obligations as well as to joint obligations. *See, e.g., Hale v. Spaulding*, 145 Mass 482, 483, 14 NE 534, 535 (1888) (release of one joint debtor is a release of all); *Tuckerman, et al v. Newhall*, 17 Mass 580, 584 (1822) (release of one joint and several debtor releases all).

unitary nature of a joint obligation, that theory is not helpful in the context of a release of a joint *and several* obligation because a joint and several obligation is not unitary in nature and the promisee thus can elect to maintain separate actions against the nonreleased co-obligors. As Havighurst correctly concludes,

> "[the 'unitary obligation' rationale for the 'release of one releases all' rule] appears to have proper application only to obligors who are jointly bound as distinguished from those who are bound jointly and severally."

Havighurst at 6. It follows that the unitary obligation rationale, like the other theoretical rationales advanced in support of the "release of one releases all" rule, must be abandoned as unhelpful in the context of a joint and several obligation.

That conclusion accords with the conclusions of others who have commented on the "release of one releases all" rule. The "release of one releases all" rule in contract has been criticized as being anomalous and unjust, *Restatement (Second) of Contracts*, § 294 comment *a* (1981), and as lacking a sound theoretical basis. Havighurst at 1-2. Professor Corbin notes that many jurisdictions regard the "release of one releases all" rule as an unfair "trap." Arthur Linton Corbin, 4 *Corbin on Contracts*, § 931 (1951 and 1998 Supp). Professor Williston points out that a "technically satisfactory" reason for the "release of one releases all" rule is "not easy to find." Williston and Jaeger, 2 *A Treatise on the Law of Contracts*, § 334.

In *Crawford*, Roberts and Freeland executed a promissory note in favor of Crawford, under the terms of which they agreed to be held jointly and severally liable in the event of default.[7] 8 Or at 324. Crawford later released Freeland from all liability on the note and then brought an action on the note against Roberts. *Id.* at 324-25. In that

---

[7] The *Crawford* opinion states in *dicta* that a release of one *joint* obligor releases all. Commentators have recognized, however, that the facts of that case limit the holding of that case to joint *and several* contract obligations. *See, e.g.*, Charles G. Howard, *The Restatement of the Law of Contracts With Oregon Notes*, 12 Or L Rev 201, 205, 207 (1932).

action, Roberts contended that Crawford's release of Freeland automatically discharged Roberts' liability under the note. *Id.* This court agreed:

> "The facts alleged in the second separate answer we think are sufficient to constitute a defense to this action, and that the demurrer to said defense was properly overruled by the court. It is a well-settled rule of elementary law that 'a release of one joint maker by the holder * * * will discharge all the joint parties, for such a release is a complete bar to any joint suit, and no separate suit can be maintained in such case.' *Story on Promissory Notes*, § 425 [(5th ed 1859)]; *Chitty on Bills*, 314 [(12th ed 1854)]."

*Id.* at 325-26.

The *Crawford* court relied heavily on the theory that there could be only one action against co-obligors on a *joint* debt. That reliance is clear when one considers the full text of section 425 of Story's treatise on promissory notes, cited in *Crawford*:

> "A release of one joint maker [of a promissory note] * * * by the holder will discharge all the joint parties; for such a release is a complete bar to any joint suit, and no separate suit can be maintained in such a case."

J. Story, *Commentaries on the Law of Promissory Notes*, § 425 (5th ed 1859). The *Crawford* court also relied heavily on the "one satisfaction" theory, as is demonstrated by examination of the passage from Chitty's treatise on bills of exchange cited in *Crawford*:

> "In general, a *release* to one of several joint and several debtors or parties to a bill or note operates as a release of the whole, for the debt is thereby in law discharged."

J. Chitty, *A Practical Treatise on Bills of Exchange*, 314 (12th ed 1854) (emphasis in original). The *Crawford* opinion offered no additional or alternative theoretical justifications to support the "release of one releases all" rule in contract in the context of a joint and several obligation.

The *Crawford* decision also failed to consider and address a then-current movement toward making some allowance for consideration of the intent of the parties to a release when determining the effect of that release. For

example, some English cases involving releases to co-debtors, decided well before *Crawford*, gave effect to a reservation of rights in the particular release involved. *See, e.g.*, *Solly v. Forbes*, 2 Brod & B 38 (1820) (giving effect to reservation of rights against nonreleased co-obligor); *Thompson v. Lack*, 3 CB 540 (1846) (same). This consideration of the intent of the parties to a release had been adopted in the United States as well. *See, e.g.*, *Benjamin v. McConnell*, 9 Ill 536, 544 (1847) (release of one joint debtor, absent an express reservation of rights against other co-obligors, is a release of all).

As noted, this court has considered the "release of one releases all" rule in contract on one other occasion, again speaking with approval of the rule. In *Cummings*, Mrs. Burrell loaned Charles and Marjorie Cummings, husband and wife, the sum of $5,000. Mr. and Mrs. Cummings executed an acknowledgment of the debt, and Burrell then wrote across the text of the acknowledgment the words "void in the event of my death." Burrell died before the loan was repaid, and her estate brought an action against Mr. and Mrs. Cummings seeking repayment of the loan. This court held that Burrell granted a valid conditional release and that her death extinguished the Cummings' obligation. *Crawford*, 205 Or at 534. In *dicta*, the court noted, in response to the trial court's finding that Burrell had forgiven Mrs. Cummings' debt, that the "release of one releases all" rule would have resulted in the release of Mr. Cummings as well. *Id.* at 528. The court gave no justification or theoretical basis for that statement.

From the foregoing discussion, the briefs of the parties, and our own research, it is possible to set out the competing arguments advanced for and against the "release of one releases all" rule in contract. We do so here in outline form to facilitate further analysis.

A. *Factors Favoring Retention of the "Release of One Releases All" Rule in Contract*
   1. The unitary nature of a joint obligation;
   2. The limitation of the claimant to one satisfaction;
   3. The construction of an instrument of release against the releasor;

4. The difficulties presented by the right of contribution, where such right exists; and

5. The argument that the rule should be changed, if at all, only by the legislature.

B. *Factors Favoring Abrogation of the "Release of One Releases All" Rule in Contract*

1. The rule is not founded on a substantively correct theoretical basis;

2. The rule is at odds with Oregon rules for contract interpretation;

3. The rule is at odds with Oregon rules for releases in tort; and

4. The great majority of other United States jurisdictions have, either by judicial decision or by statute, abrogated the "release of one releases all" rule in contract.

■　　As this court stated in *G.L. v. Kaiser Foundation Hospitals, Inc.*, 306 Or 54, 757 P2d 1347 (1988),

"[o]rdinarily this court reconsiders a nonstatutory rule or doctrine upon one of three premises: (1) that an earlier case was inadequately considered or wrong when it was decided, *see, e.g., Winn v. Gilroy*, 296 Or 718, 681 P2d 776 (1984) (reconsidering parental immunity); (2) that surrounding statutory law or regulations have altered some essential legal element assumed in the earlier case, *see, e.g., Dahl v. BMW*, [304 Or 558, 567, 748 P2d 77 (1988)] (enactment of comparative fault statutes supports re-examination of prior case holding that failure to wear a safety belt is not a proper defense); *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or 543, 562-67, 652 P2d 318 (1982) (wrongful death law did not alter liability to child if parent survives injury); or (3) that the earlier rule was grounded in and tailored to specific factual conditions, and that some essential factual assumptions of the rule have changed. Without some such premise, the court has no grounds to reverse a well-established rule besides judicial fashion or personal policy preference, which are not sufficient grounds for such a change, *see Norwest*, 293 Or at 553."

*G.L.*, 306 Or at 59. Based on the foregoing discussion, we conclude here that *Crawford* was "inadequately considered or wrong" when it was decided. *G.L.*, 306 Or at 59. Specifically,

the *Crawford* court did not give adequate consideration to the distinctions between joint obligations and joint and several obligations and, because it did not do so, it failed to consider fully the various theories on which the "release of one releases all" rule supposedly is founded, the strengths and weaknesses of those theoretical bases with regard to joint obligations and those that are joint and several, and the different approaches across jurisdictions as to the application of the "release of one releases all" rule at the time that *Crawford* was decided. In short, the rule was neither as "well-settled" nor as "elementary" as the *Crawford* court apparently believed. Accordingly, the "release of one releases all" rule is ripe for reexamination by this court. *Heino*, 306 Or at 375.

As we have demonstrated above, the theoretical justifications for the "release of one releases all" rule that this court applied in *Crawford* and upon which plaintiffs here rely provide insufficient support for retaining that rule in the context of a joint and several obligation. The "unitary nature of the obligation" rationale is technically deficient because it fails to recognize the well-understood distinctions between a joint obligation, which could be understood as unitary in nature, and a joint and several obligation, which is not unitary. The "one satisfaction" rationale is unsound because it fails to account for releases given in exchange for less than a complete satisfaction of a claim. The rationale based on construction of the releasing instrument against the releasing party finds no support in modern rules of contract construction, and probably more strongly supports abrogation of the "release of one releases all" rule rather than adherence to it. Last, the rationale for the "release of one releases all" rule based on the difficulties presented by the right of contribution, where it exists, cannot serve as the sole theoretical basis for the rule because it fails to explain the use of the rule in jurisdictions or contexts in which the right of contribution is not available.

■■ On full consideration of the competing arguments, some of which were not advanced in *Crawford*, we today hold that the release of one joint and several contract obligor does not release automatically the other joint and several obligors. Instead, the release must be given effect according to the intentions of the parties to that release. *See Cranford*, 252 Or

at 452-53 (stating rule in tort context), *citing Hicklin*, 201 Or at 135-36.

The rule we adopt today offers several advantages. It explicitly recognizes that a release is a contract, in accord with this court's holding in *Lindgren v. Berg*, 307 Or 659, 665, 772 P2d 1336 (1989) ("release is a contract in which one or more parties agree to abandon a claim or right"). The new rule thus harmonizes the rule for interpretation of a release of a joint and several contract obligor with Oregon's rules for interpretation of contracts generally. *See, e.g., Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992) (primary and governing rule of contract construction is to ascertain the intention of the contracting parties). The rule we adopt today also harmonizes the rule for interpretation of a release of a joint and several contract obligor with the Oregon rule that the intent of the parties to the release governs the interpretation of a release of one joint tortfeasor. *Cranford*, 252 Or at 452-53. In our view, there is no logical reason that those rules should differ.

It is argued here, as noted above, that if the "release of one releases all" rule is to be changed or abolished, that action should be taken by the legislature rather than by this court. We affirm our statement in *Heino v. Harper*, 306 Or at 378, that, where we have competence to act, we should not hide from our responsibilities with regard to judge-made law just because we share those responsibilities with the legislature.

The decision of the Court of Appeals and the judgment of the circuit court are reversed. The case is remanded to the circuit court for further proceedings.

**DURHAM, J.,** concurring.

I agree with the court's disposition. I write separately to comment on the discussion of the premises for reconsideration of common-law rules expressed in *G.L. v. Kaiser Foundation Hospitals, Inc.*, 306 Or 54, 59, 757 P2d 1347 (1988).

In *G.L.*, the plaintiff asked this court to impose liability on a hospital, without proof of negligence, for an employee's criminal assault against the plaintiff, who was a

hospital patient. The employee was acting outside the scope of employment at the time of the assault. Because the parties had framed their arguments in terms of the competing policies supporting retention or modification of the preexisting common-law rule of nonliability, the court correctly referred to earlier cases in which it had analyzed the continuing viability of various common-law rules. The court purported to discern in the cases three general premises for judicial reconsideration of a nonstatutory rule or doctrine. However, in describing those premises, the court took care to use wording that would preclude interpreting the stated premises as an exhaustive list:

> "*Ordinarily* this court reconsiders a nonstatutory rule or doctrine upon one of three premises: (1) that an earlier case was inadequately considered or wrong when it was decided, *see, e.g.*, *Winn v. Gilroy*, 296 Or 718, 681 P2d 776 (1984) (reconsidering parental immunity); (2) that surrounding statutory law or regulations have altered some essential legal element assumed in the earlier case, *see, e.g.*, *Dahl v. BMW*, [304 Or 558, 567, 748 P2d 77 (1988)] (enactment of comparative fault statutes supports re-examination of prior case holding that failure to wear a safety belt is not a proper defense); *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or 543, 562-67, 652 P2d 318 (1982) (wrongful death law did not alter liability to child if parent survives injury); or (3) that the earlier rule was grounded in and tailored to specific factual conditions, and that some essential factual assumptions of the rule have changed. Without *some such* premise, the court has no grounds to reverse a well-established rule besides judicial fashion or personal policy preference, which are not sufficient grounds for such a change, *see Norwest*, 293 Or at 553."

*G.L.*, 306 Or at 59 (emphasis added.)

In fact, as the wording emphasized above indicates, the list of premises set out in *G.L.* was not exhaustive. For example, in *Noonan v. City of Portland*, 161 Or 213, 239-40, 88 P2d 808 (1939), this court held that courts should not overrule announced controlling principles of law unless they are "manifestly wrong." *G.L.* did not overrule the *Noonan* manifest error criterion merely by failing to cite it. The manifest error criterion, as with the other premises cited in *G.L.*, requires more than an appeal to "judicial fashion or personal

policy preference," *G.L.*, 306 Or at 59, but, when established, is as legitimate a ground for reconsidering a nonstatutory rule or doctrine as any other example cited in *G.L.*

Some subsequent references in this court's cases to the pertinent passage of *G.L.*, quoted above, began to recast the three premises listed in *G.L.* as a closed set that preclude judicial reconsideration on any other basis. For example, *Heino v. Harper*, 306 Or 347, 759 P2d 253 (1988), called that passage in *G.L.* "*the rule* concerning reconsideration of a court-created rule or doctrine." *Heino*, 306 Or at 373 (emphasis added). However, *Heino*, like *G.L.*, also referred to the three premises as proper subjects for judicial consideration rather than as an exclusive list of preconditions or requirements. *Heino* described the premises cited in *G.L.* as "factors" and concluded that the first *G.L.* "factor"—the earlier cases were wrong when decided—justified modification of the common-law rule of interspousal tort immunity. *Id.* at 374. Without citing *Noonan*, the *Heino* court also acknowledged its duty to modify a court-made rule that was manifestly wrong:

> "The rule we consider today is judge-made. If it is no longer valid or appropriate, it is our responsibility to say so."

*Heino*, 306 Or at 378. Because the court concluded that an error in the case law justified reconsideration of the common-law rule in accordance with the first *G.L.* factor, the court in *Heino*, as in the present case, had no occasion to decide whether the absence of at least one of the *G.L.* factors would preclude such reconsideration.

That occasion arose in *Keltner v. Washington County*, 310 Or 499, 800 P2d 752 (1990), which involved the continuing viability of the common-law rule against recovery of contract damages for mental suffering alone. *Keltner* referred to the passage from *G.L.*, quoted above, as stating a "rule" and a "standard," *Keltner*, 310 Or at 505, although *G.L.* itself never used those terms. *Keltner* determined that the plaintiffs had failed to establish the presence of any one of the three premises described in *G.L.* On the basis of that conclusion, the court decided that it had no ground upon which to reconsider the common-law rule. Consequently, the court refused to address the plaintiff's argument that the common-law rule caused injustice in cases in which the breach was

particularly likely to cause serious emotional disturbance. *Keltner*, 310 Or at 509-10.

*Keltner* provoked a dissent from Justice Unis, who argued that the court's "three premise methodology" in *G.L.* was too rigid and jeopardized the appropriate judicial consideration of the current validity of the policy premises that undergird common-law rules or doctrines. Justice Unis stated:

> "I would jettison this court's self-imposed rule that precludes it from justifying rules of common law or doctrine in terms of policy. Abandonment of the present decision-making methodology employed by this court, which I advocate, does not mean that this court should ignore the doctrines of judicial restraint and stare decisis, which recognize the need for stability and predictability in the development of the law. The self-imposed rule of judicial restraint earns this court the dubious distinction of being the only state in the union to limit its traditional judicial common law-making authority so substantially."

*Keltner*, 310 Or at 512-13 (Unis, J., dissenting) (footnote omitted).

The foregoing discussion demonstrates that what began in *G.L.* as an attempt by the court to summarize a nonexclusive list of the factors that it *ordinarily* considers when reconsidering a common-law rule became, in *Keltner*, a rule that barred judicial consideration of the premises for a common-law doctrine unless the party advocating for a change established the presence of one of the *G.L.* criteria. Justice Unis was correct to criticize the court's unexplained development of such an inflexible standard for the evaluation of common-law rules and doctrines by Oregon courts.

In my view, the ancient doctrine of *stare decisis* should govern the court's reconsideration of common-law rules and doctrines. That doctrine appropriately incorporates elements of both stability and flexibility in the judicial development of the common law. *See State ex rel Huddleston v. Sawyer*, 324 Or 597, 643, 932 P2d 1145 (1997) (Durham, J., concurring in part and dissenting in part) (noting that the

two central premises of the doctrine of *stare decisis* are stability and flexibility); *Noonan*, 161 Or at 240 ("While the doctrine of stare decisis attaches great weight to precedents, it does not demand that the courts adhere to them if satisfied that they are manifestly wrong." (Citation omitted.)). Applying that doctrine, this court should evaluate the continuing validity of a common-law rule by considering whether a proper justification supports a modification. Such a justification could include any of the criteria listed in *G.L.*, the manifest error criterion described in *Noonan*, or any other appropriate justification. As *G.L.* correctly noted, "judicial fashion or personal policy preference * * * are not sufficient grounds for such a change." *G.L.*, 306 Or at 59. If the court's evaluation of a common-law rule leads it to the conclusion that the rule deserves modification, then it is the court's responsibility to say so. *Heino*, 306 Or at 378.

I agree with the majority that *Crawford v. Roberts*, 8 Or 324 (1880), gave inadequate consideration to the effect of the "release of one releases all" rule in contract cases. That is a proper justification supporting modification of that common-law rule. Accordingly, I concur.

Kulongoski, J., joins in this concurring opinion.

## APPENDIX

The "release of one releases all" rule in contract enjoys the following status in the United States:

A. *Jurisdictions abrogating by judicial decision the "release of one releases all" rule in contract:*

1. Illinois: *Grundy County Nat. Bank v. Olsen*, 178 Ill App 3d 1003, 1009, 534 NE2d 196, 200 (1989) (noting general rule that a "release of one joint obligor releases all others unless a contrary intent appears from the face of the instrument").

2. Indiana: *Gates v. Fauvre*, 74 Ind App 382, 397, 119 NE 155, 160 (1918) (intent of the parties must govern in construing a release, and is to be gathered from the instrument if in writing, and from the circumstances where release relied upon arises otherwise).

3. Iowa: *Community S. D. of Postville v. Gordon N. Peterson, Inc.*, 176 NW2d 169, 175 (Iowa 1970) (court overrules prior common-law holding that release of one releases all; adopts rule that looks to the intent of the parties).

4. Maryland: *Shriver v. Carlin & Fulton Co.*, 155 Md 51, 141 A 434, 440 (1928) (intent of parties to an instrument of release dictates the effect thereof); *Hartford v. Scarlett Harbor*, 109 Md App 217, 290-91, 674 A2d 106 (1996), *aff'd* 346 Md 122, 695 A2d 153 (1997) (principal rule governing the interpretation of a release, as with other contracts, is to effect the intention of the parties).

5. New Jersey: *Roseville Trust Co. v. Mott*, 85 NJEq 297, 96 A 402, 403 (NJ Ch 1915) (giving effect to a reservation of rights in release to one obligor).

6. North Carolina: *Smith v. Richards*, 129 NC 267, 40 SE 5, 6 (1901) (release of one judgment debtor released other debtors only to extent of their "aliquot parts" of the debt).

7. Oklahoma: *Wade v. Tapp*, 285 P2d 377, 379 (Okla 1955) (giving effect to express reservation of rights in release).

8. Pennsylvania: *Joseph Melnick Building & Loan Ass'n v. Melnick*, 361 Pa 328, 64 A2d 773, 777 (1949) (giving effect to express reservation of rights in release).

9. Texas: *J.M. Hollis Const. Co. v. Paul Durham Co.*, 641 SW2d 354, 359 (Tex Ct App 1982) (release of one joint and several obligor does not serve to release another).

10. Washington: *United Pacific Insurance Company v. Lundstrom*, 77 Wash 2d 162, 459 P2d 930, 934 (1969) (release of one joint and several contract debtor does not release others; intent of parties controls in construing release).

B. *Jurisdictions abrogating by statute the "release of one releases all" rule in contract:*

1. Alabama: Ala Code § 12-21-109 (1975 and Supp 1998) (releases "must have effect according to their terms and the intentions of the parties thereto"); *Alabama Farm Bureau Ins. Co. v. Hunt*, 519 So 2d 480, 482 (Ala 1987) (intention of parties controls construction of release).

2. California: Cal Civil Code § 1543 (West 1982 and Supp 1999) ("release of one of two or more joint debtors does not extinguish the obligations of any of the others, unless they are mere guarantors; nor does it affect their right to contribution"); *Williams v. Reed*, 113 Cal App 2d 195, 248 P2d 147, 152-53 (1952).

3. Colorado: Colo Rev Stat §§ 13-50-102, 103 (1998) (release of one or more joint debtors "shall be taken and held to be a payment in the indebtedness of the full proportionate share of the debtor so released," and unreleased joint debtor's share proportionately reduced); *Smith v. Weindrop*, 833 P2d 856, 858 (Colo Ct App 1992) (release of one joint debtor "does not affect the liability of remaining joint debtor, except as to the balance of the obligation").

4. Connecticut: Conn Gen Stat Ann § 52-142 (West 1991 and Supp 1999) ("discharge to one of several joint debtors, purporting to discharge him only, shall not affect the claim of the creditor against the other joint debtors").

5. Florida: Fla Stat Ann ch 46.015(1) (West 1994 and Supp 1999) (release of joint and several obligor shall not

release or discharge the liability of any other person who may be liable for the balance of the claim); *Stephen Bodzo Realty v. Willits Intern.*, 428 So 2d 225, 227 (Fla 1983) (court overrules prior common-law rule that release of one joint and several obligor releases all).

6. Hawaii: Haw Rev Stat §§ 483-1 to 483-6 (1993 and Supp 1998) (adopting, with amendments, the Uniform Joint Obligations Act, under which a creditor may release a joint, or joint and several, obligor and reserve fully all rights against other obligors; where the creditor fails to reserve expressly such rights, creditor may still pursue the nonreleased obligor, but the nonreleased obligor is entitled by the statute to certain reductions of the debt).

7. Kansas: Kan Stat Ann § 16-105 (1995 and Supp 1998) (release of one co-obligor does not release other co-obligors jointly or severally liable, "beyond the proper proportion of the debt or demand for which the person released was liable"); *Bazine State Bank v. Pawnee Prod. Serv.*, 245 Kan 490, 781 P2d 1077, 1083 (1989), *cert den* 495 US 932 (1990) ("when two or more debtors are jointly and severally liable on an obligation, the release of one of the debtors discharges the obligation of the other debtor only to the extent of the consideration paid for said release").

8. Louisiana: La Civ Code Ann Art 1803 (West 1987 and Supp 1999) ("remission of debt by the obligee in favor of one obligor, or a transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obligor;" other obligors not released or discharged from liability). Commentary to the Code indicates that this article replaces La Civ Code Art 2203 (1870), which reproduced Article 1285 of the Code Napoleon (one who remits of a debt in favor of one solidary obligor without an express reservation of rights against the other co-obligors is deemed to have forfeited the entire obligation).

9. Maine: Me Rev Stat Ann tit 14 §§ 11-17 (West 1980 and Supp 1998) (adopting, with amendments, Uniform Joint Obligations Act).

10. Michigan: Mich Comp Laws §§ 449.153 to 449.155 (1989 and Supp 1998) (settlement or compromise with one joint debtor does not discharge other joint debtors or preclude the creditor from pursuing claim against the other joint debtors).

11. Minnesota: Minn Stat Ann § 548.21 (West 1988 and Supp 1999) ("A creditor who has a debt, demand, or judgment against a copartnership, or several joint obligors, promisors, or debtors, may discharge one or more of such copartners, obligors, promisors, or debtors, without impairing the creditor's right to recover the residue of the debt or demand against the others, or preventing the enforcement of the proportionate share of any undischarged under such judgment. The discharge shall have the effect of a payment by the party discharged of the party's equal share of the debt, according to the number of debtors, aside from sureties.").

12. Mississippi: Miss Code Ann § 85-5-1 (1991 and Supp 1998) ("In all cases of joint or joint and several indebtedness, the creditor may settle or compromise with and release any one or more of such debtors; and the settlement or release shall not affect the right or remedy of the creditor against the other debtors for the amount remaining due and unpaid, and shall not operate to release any of the others of the said debtors.").

13. Missouri: Mo Rev Stat § 431.150 (Vernon 1992 and Supp 1998) ("It shall be lawful for every creditor of two or more debtors, joint or several, to compound with any and every one or more of his debtors for such sum as he may see fit, and to release him or them from all further liability to him for such indebtedess, without impairing his right to demand and collect the balance of such indebtedess from the other debtor or debtors thereof, and not so released; provided, that no such release shall impair the right of any debtor of such indebtedness, not so released, to have contribution from his codebtors, as is by law now secured to him."); *Gunter v. Bono*, 914 SW2d 437, 439 (Mo Ct App 1996) ("where two or more parties are jointly liable on a contractual obligation, and one party settles with the creditor so as to be released,

the creditor may still be able to proceed against the other jointly liable party").

14. Montana: Mont Code Ann § 28-1-1603 (1997) ("release of one of two or more joint debtors does not extinguish the obligation of any of the others unless they are mere guarantors, nor does it affect their rights to contribution"); *Sunbird Aviation, Inc. v. Anderson*, 200 Mont 438, 651 P2d 622, 626 (1982) (adopting rule of construction based on intent of the parties to the release).

15. Nevada: Nev Rev Stat Ann §§ 101.010 to 101.090 (Michie 1994 and Supp 1997) (adopting, with amendments, Uniform Joint Obligations Act).

16. New York: NY Gen Oblig Law §§ 15-101 to 15-110 (McKinney 1989 and Supp 1999) (adopting, with amendments, Uniform Joint Obligations Act).

17. North Dakota: ND Cent Code § 9-13-03 (1987 and Supp 1997) ("release of one of two or more joint debtors does not extinguish the obligations of any of the others unless they are mere guarantors").

18. Ohio: Ohio Rev Code Ann §§ 1779.09 to 1779.11 (Anderson 1997 and Supp 1998) (a compromise with one joint debtor does not preclude creditor from pursuing claim against other joint debtors).

19. Rhode Island: RI Gen Laws §§ 7-12-4 to 7-12-10 (1992 and Supp 1998) (a compromise with one joint debtor shall not be construed so as to discharge the other joint debtors, nor to impair the right of the creditor to proceed against the other joint debtors).

20. South Carolina: SC Code Ann §§ 32-9-10 to 32-9-30 (Law Co-op 1991 and Supp 1998) ("Any joint debtor may make a separate composition with his creditor as prescribed in this section. Such composition shall discharge the debtor making it and him only," and such composition shall not impair the creditor's rights against the other joint debtors, unless such intent appears affirmatively upon the face of the instrument.).

21. South Dakota: SD Codified Laws Ann § 20-7-12 (1995 and Supp 1998) ("release of one of two or more joint

debtors does not extinguish the obligations of any of the others, unless they are mere guarantors; nor does it affect their right to contribution").

22. Tennessee: Tenn Code Ann § 24-7-106 (1980 and Supp 1998) (releases are to be given the effect intended by the parties); *Kreutzmann v. Bauman*, 609 SW2d 736, 737-39 (Tenn 1980) (the statute, which is confined to contract actions, "changed the old technical rule of common law, whereby release of one co-obligor released automatically another co-obligor").

23. Utah: Utah Code Ann §§ 15-4-1 to 15-4-7 (1996 and Supp 1998) (adopting, with amendments, Uniform Joint Obligations Act).

24. Vermont: Vt Stat Ann tit 12 § 5054 (1973 and Supp 1998) ("creditor having a debt or demand against a partnership or several joint obligors or promisors, may discharge one or more of such partners, obligors or promisors, without impairing his right against the others as to the residue of his debt or demand").

25. Virginia: Va Code Ann § 11-10 (Michie 1993 and Supp 1998) ("creditor may compound or compromise with any joint contractor or co-obligor, and release him from all liability on his contract or obligation, without impairing the contract or obligation as to the other joint contractors or co-obligors"); *First & Merchants National Bank v. Bank of Waverly*, 170 Va 496, 197 SE 462, 465 (1938) (noting that legislature, by statute, changed common-law "release of one releases all" rule; statute held to not apply to tort actions).

26. Wisconsin: Wis Stat Ann § 113.01 to 113.11 (West 1997 and Supp 1998) (adopting, with amendments, Uniform Joint Obligations Act).

27. District of Columbia: DC Code Ann § 16-2106 (1997 and 1998 Supp) ("Any one of several joint debtors when their debt is overdue, may make a separate composition or compromise with their creditors, with the same effect as is provided in the case of parties by chapter 3 of Title 41 [discharge of obligation of one partner does not discharge other partners, nor does it impair creditor's

rights against those not discharged, DC Code Ann §§ 41-301 to 41-304 (1998)].").

C. *Jurisdictions retaining the "release of one releases all" rule in contract:*

1. Arkansas: *Tancred v. First Nat. Bank of Ft. Smith*, 124 Ark 154, 187 SW 160, 162 (1916); *but see* Ark Code Ann § 16-61-204 (1987 and Supp 1997) (release of one joint tortfeasor does not release others, unless release so provides).

2. Georgia: Ga Code Ann § 13-4-80 (1982 and Supp 1998) ("When a creditor releases another who is bound jointly with * * * a debtor * * * a release results by operation of law."). *But see Georgia R.R. Bank & Trust Co. v. Griffith*, 176 Ga App 198, 335 SE2d 417, 419-20 (1985) (the "[l]aw of this State does not allow a plaintiff fully to settle with (release) one joint obligor and agree not to enforce a judgment against him, while reserving a right to pursue others," but judgment creditor's release of one obligor did not release the other obligor, where creditor did not receive full satisfaction; court construes the agreement as a covenant not to enforce the judgment); *Weems v. Freeman*, 234 Ga 575, 216 SE2d 774, 775 (1975) ("where the right to sue [other joint tortfeasors] has been reserved and the plaintiff has not received full satisfaction, the agreement will be construed to be a covenant not to sue because of the manifest intent of the parties").

3. Kentucky: *Lewis v. Browning*, 4 SW2d 734, 735 (Ky 1928) ("valid release of one joint obligor in a writing without the consent of the other or others will likewise release them"); *but see* Ky Rev Stat Ann § 411.182(4) (Baldwin 1998) ("release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim unless it so provides").

4. Massachusetts: *Eastern Elec. v. Taylor Woodrow Blitman Const.*, 11 Mass App 192, 414 NE2d 1023, 1029-30 (1981) (noting general rule that the voluntary

discharge or release of one joint obligor discharges other joint obligors, but in *dictum* calling for placement of limits on the application of that common-law rule); *see also* Mass Gen Laws Ann ch 231B, § 4 (1986 and Supp 1998) (release or covenant not to sue or not to enforce judgment given in good faith to one of two or more persons liable in tort for the same injury shall not discharge any of the other tortfeasors from liability for the injury unless its terms so provide, but shall reduce the claim against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; release shall discharge the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor).

5.  New Mexico: *Wood v. Eminger*, 44 NM 636, 107 P2d 557, 560 (1940) (release of one codebtor releases the other codebtors); *Sunwest Bank of Farmington v. Kennedy*, 109 NM 400, 785 P2d 740, 741 (1990) (stating that "release of one releases all" is general rule regarding release of a co-obligor).

6.  West Virginia: *Rutherford v. Rutherford*, 55 W Va 56, 47 SE 240, 241-42 (1904) (release of one of two joint contractors releases both); *but see* W Va Code § 55-7-12 (1966 and Supp 1998) (release to one or more joint tortfeasors shall not inure to the benefit of another such tortfeasor, and shall be no bar to an action or suit against such other joint tortfeasor for the same cause of action to which the release relates).

7.  Wyoming: *McCord-Brady Co. v. Mills*, 8 Wyo 258, 56 P 1003, 1006 (1898) (citing in *dictum* "release of one releases all" rule); *but see* Wyo Stat § 1-1-119 (1977 and Supp 1998) (release given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death does not discharge any of the other tortfeasors from liability, unless the terms of the release so provide).

D. *No authorities found regarding "release of one releases all" rule in contract:*

1. Alaska: *But see* Alaska Stat § 09.17.080 (1998) (establishing that liability in tort among persons responsible for the same injury is several only); *Young v. State*, 455 P2d 889, 893 (Alaska 1969) (abrogating "release of one releases all" rule in tort).

2. Arizona: *But see* Ariz Rev Stat Ann § 12-2504 (1994 and Supp 1998) (release or covenant not to sue given in good faith to one of two or more joint tortfeasors does not discharge any of the other joint tortfeasors from liability unless its terms so provide; the released tortfeasor is discharged from all liability for contribution)

3. Delaware: *But see* Del Code Ann tit 6 § 2701 (1993 and Supp 1998) (establishing default position of joint and several liability for joint creditors).

4. Idaho: *But see* Idaho Code § 6-805 (1998) (release of one joint tortfeasor does not release others unless the release so provides); *Tuttle v. Wayment Farms, Inc.*, 131 Idaho 105, 952 P2d 1241 (1998) (applying statute).

5. Nebraska: *But see* Neb Rev Stat § 25-21,185.11 (1995 and Supp 1998) (release, covenant not to sue, or similar agreement entered into by a claimant and one joint tortfeasor shall not discharge other persons liable upon the same claim, unless the agreement so provides); *Scheideler v. Elias*, 209 Neb 601, 309 NW2d 67, 73-74 (1981) (release of one joint tortfeasor does not discharge others, unless it is so agreed).

6. New Hampshire: *But see* NH Rev Stat Ann § 507:7-h (1997 and Supp 1998) (release or covenant not to sue given in good faith to one joint tortfeasor discharges that person in accordance with its terms and from all liability for contribution; does not discharge other joint tortfeasors unless agreement expressly so provides, changing prior law as stated in *Masterson v. Berlin St. Ry.*, 139 A 753, 755 (NH 1927) (a release to one joint tortfeasor presumed to release all, unless a contrary intent shown by the instrument)).